EL PUEBLO DE PUERTO RICO, apelado, *v.* ANÍBAL ESMURRIA ROSARIO, acusado y apelante.

*Número:* CR-85-29     *Resuelto:* 4 de diciembre de 1986

*Pedro J. Rodríguez Santiago,* abogado del apelante; *Rafael Ortiz Carrión, Procurador General, Marjorie Rivera Rodríguez, Procuradora General Auxiliar,* abogados de El Pueblo.

SENTENCIA

Al acusado apelante, Aníbal Esmurria Rosario se le imputó el delito de asesinato en primer grado y una infracción al Art. 8 de la Ley de Armas, 25 L.P.R.A. sec. 418, por haber causado la muerte a Nélida R. March Colón el 28 de noviembre de 1982 en el pueblo de Juana Díaz. Celebrado el juicio por jurado, éste rindió veredicto de culpabilidad por el delito de homicidio y por infracción al Art. 8 de la Ley de Armas. Se refirió al convicto para el estudio correspondiente de la Oficina del Oficial Probatorio. Rendido el informe, se le impuso sentencia de seis (6) años por el delito de homicidio y cinco (5) años por infracción al Art. 8 de la Ley de Armas, a cumplirse concurrentemente. Se le denegó el beneficio de una sentencia suspendida.

No conforme, acudió ante nos. Señala como único error que el tribunal sentenciador debió concederle el beneficio de una sentencia suspendida, según lo recomendó el oficial probatorio.

Reiteradamente hemos resuelto que la concesión de la libertad a prueba está a la discreción del tribunal de instancia. *Pueblo* v. *Laboy,* 110 D.P.R. 164 (1980); *Pueblo* v. *Álvarez Maurás,* 100 D.P.R. 620 (1972); *Pueblo* v. *Martínez Rivera,* 99 D.P.R. 568 (1971). Salvo que nos enfrentemos a un abuso de su discreción, la determinación del magistrado no será alterada en apelación. *Pueblo* v. *Emmanuelli,* 61 D.P.R. 667 (1947); *Pueblo* v. *Llanos Virella,* 97 D.P.R. 95 (1969).

En el presente caso el tribunal sentenciador no abusó de su discreción. Su decisión se basó fundamentalmente en que el convicto dio una versión distinta al oficial probatorio de cómo habían ocurrido los hechos, la cual ponderada a la luz de la prueba que se desfiló en sala, evidenciaba una *conducta men-*

*daz.* Señaló el magistrado que el convicto estableció ante el oficial probatorio un cuadro de defensa propia, lo que no concordaba con la prueba desfilada en sala (T.N.P., pág. 4, vista de 7 de mayo de 1985.); que mató a una mujer dentro del carro (T.N.P., pág. 8.); que la prueba señalaba que este señor informó a la Policía que había tenido problemas y que estaba loco por salir de esta señora porque le estaba ocasionando problemas con su esposa (T.N.P., pág. 14.), y que la cadena de evidencia presentada hacía más creíble lo dicho en sala que lo expresado al oficial probatorio. (T.N.P., pág. 4.) Entendió el tribunal que ante la distorsión de hechos fundamentales en torno al delito no debía premiar al acusado convicto con el beneficio de una libertad a prueba.

De un análisis del informe del oficial probatorio y de la prueba recibida durante el juicio, el juez concluyó que no era procedente la suspensión de la sentencia.

Estamos ante unos hechos que denotan un alto grado de violencia. Como muy bien señaló el propio juez sentenciador, ejerció su discreción hasta el grado de imponerle las sentencias concurrentemente en lugar de consecutivamente. No abusó de su discreción el juez de instancia al negarle el beneficio de una sentencia suspendida.

Se confirma la sentencia recurrida.

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. La Juez Asociada Señora Naveira de Rodón emitió voto particular.

*(Fdo.)* Bruno Cortés Trigo
*Secretario General*

—O—

Voto particular emitido por la Juez Asociada Señora Naveira de Rodón.

En este caso debemos decidir si abusó de su discreción el juez de instancia al negarse a concederle al acusado apelante los beneficios de una sentencia suspendida.

El día de los hechos el acusado se encontraba en un negocio comercial conversando con unas personas. Al salir del mismo escuchó que lo llamaban desde un automóvil y al acercarse vio que en él estaba la víctima Nelly March. Ésta fue amante del acusado. En ese momento surgió una discusión en la cual la víctima alegadamente profirió palabras altisonantes al acusado y puso en entredicho su hombría. En medio de esta discusión el acusado sacó un revólver que portaba ilegalmente y le disparó *seis* veces causándole la muerte.

Luego de haber sido encontrado culpable del delito de homicidio e infracción al Art. 8 de la Ley de Armas, 25 L.P.R.A. sec. 418, por un jurado, se le sentenció a prisión y se le denegó el beneficio de una sentencia suspendida. El acusado apelante acude ante nos alegando: que erró el tribunal sentenciador al no concederle los beneficios de una sentencia suspendida.

La idea básica tras el mecanismo de la sentencia suspendida es sumamente sencilla. Se trata de que la persona convicta viva una vida productiva en la sociedad para intentar alejarlo del trasiego delictivo. La sentencia suspendida es una alternativa beneficiosa en casos apropiados, tanto para el convicto como para la sociedad. Entre los beneficios que genera el sistema de sentencia suspendida están los siguientes: evita los efectos negativos en el individuo que la reclusión tan frecuentemente produce, minimiza el impacto de la reclusión sobre los dependientes y familiares del convicto, preserva la libertad del delincuente sin sacrificar el interés social en la prevención y corrección del crimen, promueve afirmativamente la rehabilitación del delincuente, al permitirle mantener contactos sociales normales pero condicionados en la comunidad. *A.B.A. Advisory Committee on Sentencing and Review: Standards Relating to Sentencing Alternatives and Procedures* Secs. 1–2 (1976). Este propósito rehabilitador de nuestro sistema correccional está plasmado en la Constitución del Estado Libre Asociado de Puerto Rico. Ésta dispone en su Art. VI, Sec. 19, Const. E.L.A., L.P.R.A., T. 1, pág. 379,

que "[s]erá política pública del Estado Libre Asociado ... reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social".

A pesar de lo anterior no todo convicto es merecedor de los beneficios de la sentencia suspendida. Decidir quién cualifica para los mismos es función discrecional del juez sentenciador. La decisión que tome el juez sentenciador sobre conceder o denegar una sentencia suspendida goza de una presunción de ser justa y correcta. *Pueblo* v. *Pérez Bernard,* 99 D.P.R. 834 (1971). Aunque hemos reconocido que esta discreción no es absoluta, *Martínez Torres* v. *Amaro Pérez,* 116 D.P.R. 717 (1985) ; *Pueblo* v. *Pérez Bernard,* supra; *Pueblo* v. *Sánchez González,* 90 D.P.R. 197 (1964), en ausencia de que se demuestre por el acusado un claro abuso de discreción, este tribunal no revocará una sentencia porque el juez de instancia en el ejercicio de su discreción niegue la concesión de una sentencia suspendida. *Pueblo* v. *Llanos Virella,* 97 D.P.R. 95 (1969).

Al decidir si conceder o no una sentencia suspendida se tienen que considerar varios factores *a la luz de las circunstancias particulares de cada caso.* La Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027, dispone en parte que:

> El Tribunal Superior *podrá* suspender los efectos de la sentencia que se hubiere dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menor de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales o cualquier violación a la Ley de Explosivos de Puerto Rico, secs. 561 a 593 del Título 25 que constituya delito grave y cualquier delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o sustancias que puedan utilizarse para fabricar explosivos o detonadores, artefactos o mecanismos prohibidos por la referida Ley de Explosivos de

Puerto Rico y *podrá* asimismo, suspender los efectos de la sentencia que [se] hubiere dictado en todo caso de delito menos grave que surja de los mismos hechos o de la misma transacción que hubiere dado lugar, además, a sentencia por delito grave que no fuere de los excluidos de los beneficios de las secs. 1026 a 1029 de este título incluyendo el caso en que la persona haya sido declarada no culpable en dicho delito grave o rebajado dicho delito grave a delito menos grave y así convicta, y ordenará que la persona sentenciada quede en libertad a prueba siempre que al tiempo de imponer dicha sentencia, *concurran todos los requisitos* que a continuación se enumeran: (1) que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada; y a la cual no se hubiere suspendido los efectos de una sentencia anterior por delito grave; (2) que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico; (3) que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada, y que, del contenido de ese informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad. . . . (Énfasis suplido.)

El juez sentenciador deberá determinar si el beneficio de la sentencia suspendida es compatible con la seguridad y protección de la comunidad.

## II

La violencia es uno de los problemas sociales más serios y alarmantes a que nos enfrentamos hoy en día. Particularmente la violencia contra la mujer en sus distintas manifestaciones[1] y el abuso de menores, lo que ha ido en aumento en los últimos tiempos. M. Alvarado, *Violencia contra la mujer: violación, incesto y maltrato en la experiencia puertorriqueña*, Ponencia presentada en la Primera Conferencia Nacional sobre Violencia contra la Mujer, Colorado, octubre de 1979. Un gran número de los crímenes y actos de violencia que a diario salen publicados en los periódicos están relacionados con muertes o violencia sufrida por las mujeres de parte de sus esposos, ex esposos, amantes o amigos,[2] lo que demuestra la gran alza en la incidencia de este tipo de actuación. Esto es así aun cuando la mayoría de este tipo de actos de violencia no es informado a la Policía.[3] De un análisis de aquellas incidencias que sí son informadas a la Policía[4] se

---

[1] Entre las distintas manifestaciones se encuentran la violación, el incesto y las agresiones físicas y sicológicas.

[2] Como ilustración tenemos que durante los meses de agosto a noviembre de 1986 se ha publicado un gran número de noticias relacionadas con la incidencia de diversos actos de violencia contra la mujer. Entre éstas están:

" 'Alarmante aumento en asesinato pasional de mujeres', *El Reportero*, miércoles, 5 de noviembre de 1986, pág. 10.

" 'Asesinan a dos secretarias', *El Vocero*, lunes, 6 de octubre de 1986, pág. 3.

" 'El divorcio', *El Reportero*, martes, 30 de septiembre de 1986, pág. 28.

" 'Ejecuta dos mujeres y se mata', *El Vocero*, sábado, 30 de agosto de 1986, pág. 2.2."

[3] *Preventing Domestic Violence Against Women*, Bureau of Justice Statistics Special Report, 1986, pág. 1.

[4] Según cálculos basados en estadísticas del Departamento de la Policía, casi un tercio de las mujeres que mueren víctimas de asesinato u homicidio lo hacen por mano de sus esposos o ex esposos. En 1983 el 81% de los asesinatos u homicidios contra mujeres comprendía una relación familiar o de amistad; en 1984 el 58%, y en 1985 el 64%. Para 1983 alrededor del 47% de las muertes fueron por celos y otros motivos pasionales. Un total de 1,520 mujeres fueron víctimas de agresiones agravadas en 1983, de las cuales

desprende que estos actos de violencia trascienden todas las líneas raciales, económicas y sociales. Las mujeres víctimas de abusos físicos, emocionales y sexuales, así como sus agresores, provienen de todo tipo de hogares, preparación académica, ocupación o profesión, y situación económica y social. Y. Díaz Pérez y D. G. Knudson, *Que nadie se entere: estudio sobre las características de las familias en que ocurre el maltrato a la esposa en Puerto Rico,* Escuela Graduada de Trabajo Social, Univ. de Puerto Rico, 1984.

Los incidentes de violencia contra la mujer no son aislados sino que aumentan en frecuencia e intensidad. Una vez una mujer ha sido víctima de un incidente de violencia familiar el riesgo de que se repita la agresión es muy alto.[5] Por lo regular este tipo de situación "de no ocurrir un desenlace fatal requieren la intervención de terceras personas para poner fin al maltrato". Díaz Pérez y Knudson, *op. cit.,* pág. 4.

## III

Nuestro sistema de justicia tiene que responder positivamente a esta situación de violencia antes descrita. Esto no significa que el mismo se vaya a guiar por la máxima "ojo por ojo y diente por diente", pues para eso está nuestra ley de sentencia suspendida que permite que, en los casos apropiados, personas convictas por aquellos delitos que no sean los específicamente excluidos de la ley[6] puedan aspirar a que sus

---

en 269 casos (el 18%), el sospechoso de la agresión era el esposo, ex esposo o amante de la víctima. Extrañamente en 403 casos no surge de la querella la relación del agresor con la víctima. En el 8% de las agresiones el agresor había sido el novio, padre, hijo, otro familiar o amigo. Para 1984 el total de agresiones agravadas contra mujeres ascendió a 1,766 casos.

[5] *Preventing Domestic Violence Against Women,* supra. "During a 16 month time period following an incident of domestic violence, approximately 32% of the women were victimized again."

[6] Aunque el delito cometido por el apelante, en las circunstancias particulares aquí discutidas, no está expresamente excluido por el Legislador de los beneficios de la sentencia suspendida, nada impide que el juez sen-

casos sean considerados para cualificar. La ley señala los criterios que debe analizar el juez sentenciador al decidir sobre la procedencia de una sentencia suspendida.

La sentencia dictada en el caso de autos reconoce el alto grado de violencia contenido en las circunstancias del mismo. El hecho de que la víctima fuera amante del apelante, que en la comisión del delito mediara un alto grado de contenido emocional y que se tratara de lo que se ha denominado como crimen pasional, no pueden ser factores que tengan el efecto de minimizar la naturaleza y gravedad del acto criminal cometido.

La política pública del Estado en relación con este tipo de violencia está reflejada en la Orden Administrativa Núm. 85-01 del Secretario del Departamento de Justicia que dispone:

*2—Delitos de Interés Público:*

Existen casos que, por su naturaleza, están revestidos de un interés público. La ciudadanía espera la mayor dedicación y esmero de parte de todos los fiscales a quienes se les h[a] encargado tales casos. Son ilustrativos de este tipo de delitos los asesinatos, violaciones, robos de cierta trascendencia, ciertos casos de drogas, hurto de automóviles, *delitos contra mujeres y niños,* delitos de corrupción gubernamental y otros que, por su circunstancia, sabemos calan en la opinión pública. Los fiscales de distrito han de estar atentos a este tipo de caso y les darán un seguimiento estricto a los mismos, a fin de garantizar que los fiscales de sala estén listos para entrar al juicio desde el primer señalamiento.

. . . . . : . . .

*8—Alegaciones Pre-Acordadas en Casos de Asesinatos, Violaciones, Robos, Delitos Contra Mujeres y Niños, Distribución y Venta de Drogas y Corrupción Gubernamental:*

---

tenciador, en el ejercicio de su discreción pondere y considere esas circunstancias y en su consecuencia deniegue la sentencia suspendida. Claro, la no disponibilidad absoluta de la sentencia suspendida en este tipo de caso requiere una acción legislativa.

Se instruye en el sentido de que toda rebaja de delito en los casos indicados, deberá ser consultada previamente con la Oficina Central de Investigaciones y Procesamiento Criminal. En estos casos, los fiscales deberán ser exigentes y velar porque la ley se aplique con el mayor rigor posible. Deberán radicarse mociones de agravantes cuando las mismas procedan y oponerse a las sentencias suspendidas en aquellos casos en que puedan ser concedidas. Se deberán hacer alegaciones de reincidencia o delincuencia habitual cuando las mismas procedan. (Énfasis suplido y escolio omitido.)

Por otro lado, la Regla 21 de Evidencia, 32 L.P.R.A. Ap. IV, R. 21 y la Regla 154.1 de Procedimiento Criminal de 1979 (34 L.P.R.A. Ap. II, R. 154.1) demuestran el interés del Estado en eliminar los escollos para lograr el esclarecimiento de este tipo de delito y promover que las víctimas informen las agresiones de que son objeto.

Analizados los hechos de este caso somos de la opinión que no abusó de su discreción el juez de instancia al no concederle al acusado los beneficios de una sentencia suspendida. Del expediente no se desprende que existieran circunstancias mitigantes extraordinarias, ni actos o conducta altamente provocadora por parte de la víctima que permitan inclinar la discreción judicial a favor de la concesión de una sentencia suspendida. Por otro lado las circunstancias en que se cometió el delito reflejan un posible problema de conducta o carácter en el acusado, siendo este uno de los factores a considerar por el juez al ejercer su discreción.

Los jueces somos la última autoridad en el sistema judicial. Si no logramos manejar los casos de violencia, en este caso en específico contra la mujer, con el enfoque e interés judicial apropiados, corremos el peligro de hacer que estos crímenes sean considerados como algo trivial e insignificante. Por tales motivos, los jueces no podemos ignorar la seriedad

de estos crímenes, en particular, los cometidos contra las mujeres. Restarles importancia limitaría la efectividad de la intervención judicial en este tipo de casos y agravaría un ya ingente problema social.

Por todo lo anterior no erró el juez de instancia al negarse a conceder los beneficios de una sentencia suspendida.