Ex Policía Juan San Vicente Frau, Placa 7–2478, apelante y recurrido, *v.* Policía de Puerto Rico, apelada y recurrente.

*Número:* AT-95-35    *Resuelto:* 12 de noviembre de 1996

*Jacqueline Novas Debién, Subprocuradora General, Sigfredo Rodríguez Isaac, Procurador General Auxiliar,* abogados de la parte recurrente; *Ángel R. Collazo Matos,* abogado de la parte recurrida.

PER CURIAM: El policía desempeña funciones de vital importancia, a saber, prevenir y combatir la comisión de de-

litos, imponer respeto y restablecer el orden.(¹) El desempeño de esas tareas se da muchas veces en situaciones de violencia, incluso contra su persona; claro está, su condición de policía no lo excluye ni lo inmuniza de incurrir en tales actos dentro y fuera del seno familiar. Es, pues, requisito indispensable que cada miembro de la Uniformada posea un mínimo de autocontrol y aptitud de mantener ecuanimidad y cordura en todo momento, que tenga la capacidad de apaciguar ánimos exacerbados. En sus distintas vertientes resulta antagónico ser Oficial de la Policía y a la vez incurrir en actos de violencia doméstica en cualquiera de sus múltiples manifestaciones: abuso físico o emocional; maltrato conyugal o de menores.

La violencia doméstica es un mal endémico y una infamia repudiable que aqueja la sociedad contemporánea. Si algo ha de quedar claro es la política pública en su contra, consagrada en la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. sec. 601 *et seq.*). Esta breve introducción marca el curso decisorio de este recurso.

I

Juan San Vicente Frau, Teniente II de la Policía, adscrito a la Comandancia de Área de Bayamón, fue expulsado permanentemente por el Superintendente de la Policía, Lcdo. Pedro Toledo Dávila. En apelación, la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.) redujo la sanción a una suspensión de empleo y sueldo por un período de cinco (5) meses.

---

(¹) Pensamiento de hace más de treinta (30) años, que comunicaba en la Universidad de Puerto Rico el ilustre Profesor Jaro Mayda en el Curso de Introducción al Derecho: "la policía representa en una sociedad, la *violencia legalizada*. Es función indeclinable de los tribunales controlarla y velar por que no se incurra en abusos".

No conforme, el Superintendente de la Policía apeló.(²) Procede revocar a la C.I.P.A.

Desde octubre de 1992, Juan San Vicente Frau vivía en concubinato con una joven de aproximadamente veinte (20) años. El 23 de mayo de 1993, luego de que ella le confesara infidelidad, él reaccionó de forma violenta. La agredió físicamente *en más de una ocasión*. Así lo relató la víctima en su declaración prestada durante la investigación:

"El acto de violencia que él cometió hacia mí, fue culpa mía, porque yo primero le mentí y luego le dije la verdad, que fue le fui infiel, al yo decirle eso, él reaccionó de esa forma y me agolpeó. Cuando llegamos a la casa, como a las 8:00 p.m., más o menos, nos recostamos, de momento él me dice, que me levante, que nos vamos y cuando se levanta, *empezó a darme, cuando me estaba dando, que me levanté del piso, me arrinconé en una esquina y le pedí por favor que me dejara de dar, me empezaron unas náuseas, como me dio en la espalda, no me podía mover del dolor*, se lo dije a él, que por favor me buscara unas pastillas para el dolor, él me ayudó a acostarme, me chequeó la espalda, bajó a dónde su mamá, me buscó unas pastillas con agua, me ayudó a levantarme para que me las pudiera beber y él mismo, me ofreció llevarme al hospital. Como yo no me podía mover, le dije, que por favor llamara a una ambulancia, él me dijo que no, que él me llevaba, y le dije que lo olvidara. Luego más tarde, que me quedé dormida, porque las pastillas dan sueño, cuando me despierto, que empiezo a hablar con él, *vuelve y me dá por segunda vez, me dieron náuseas y él* insistía en llevarme al hospital, pero yo le decía que no, porque no me podía mover casi, él quería llamar a una amiga mía, para que le confirmara si lo que yo le decía era verdad y vamos a casa de su mamá, él me llamó, habló con ella y me dejó hablar con ella y yo por clave le pude decir lo que me pasaba para que me fuera a recoger. Ella llamó a mí mamá, le dijo más o menos lo que me pasaba, porque ella no sabía a ciencia cierta lo que me había sucedido,

---

(²) El 9 de diciembre de 1994 la Policía de Puerto Rico solicitó ante el Tribunal Superior, Sala de San Juan, la revisión judicial de la determinación de la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.).

De conformidad con el entonces Art. 3.002(e) de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i) y la Orden Administrativa Núm. XII de 23 de enero de 1995 (4 L.P.R.A. Ap. XXIII), el expediente nos fue remitido.

4

mí mamá apareció con mí hermana y dos policías ...." (Énfasis suplido.) Apéndice III de la Solicitud de revisión judicial, pág. 8.

Juan San Vicente Frau fue denunciado por infringir la Ley para la Prevención e Intervención con la Violencia Doméstica. Sin embargo, a través de todo el proceso judicial y el administrativo, la víctima asumió la responsabilidad por lo sucedido y aceptó la agresión como un acto justificado por su infidelidad. Posteriormente la denuncia fue archivada por la falta de interés y ausencia de cooperación de la perjudicada. Para entonces había regresado a convivir con el agresor. No obstante, el asunto no terminó ahí.

II

Según indicado, en lo administrativo, el 8 de junio de 1993, luego de una investigación que confirmó los hechos, el Superintendente de la Policía le imputó violación al Art. 14, Sec. 14.5 del Reglamento de Personal de la Policía. En sus incisos 27 y 28 establece como faltas *graves* lo siguiente: 27. Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía; 28. Vivir en concubinato.

Se le notificó la intención de *expulsarlo* de la Uniformada como sanción. Se le apercibió de su derecho a una vista administrativa de naturaleza informal, en la cual le explicarían los cargos y le brindarían la oportunidad de ofrecer su versión. Así lo hizo Juan San Vicente Frau. Luego, la autoridad nominadora confirmó la presentación de cargos. El 17 de septiembre de 1993 le notificó formalmente a Juan San Vicente Frau su expulsión como miembro de la Policía de Puerto Rico.

No conforme, Juan San Vicente Frau acudió ante la C.I.P.A., foro administrativo facultado para atender este

tipo de controversias. 1 L.P.R.A. sec. 172(2).[3] Véase *Ortiz Ruiz v. Superintendente Policía*, 132 D.P.R. 432 (1993). El 10 de octubre de 1994, tras celebrarse una vista y luego de recibida la prueba testifical, la C.I.P.A., mediante escueta resolución, unánimemente adoptó las determinaciones de hecho y conclusiones de derecho siguientes:

Para marzo de 1993 el apelante convivía maritalmente con [una joven], siendo ambos solteros. El día 23 de marzo de 1993 [ella] le confesó al apelante que le había mentido y que le había sido infiel. El apelante agredió a su concubina.

La [joven] se comunicó con una amiga y ésta llamó a la mamá [de la joven], quien fue a la casa del apelante con dos policías.

A pesar de que la [joven] siempre manifestó que no tenía interés en presentar querella el apelante fue denunciado. Luego de los trámites procesales de rigor el caso fue archivado por falta de interés de la perjudicada.

. . . . . . . . .

De la prueba ante nos, concluimos que la conducta del apelante violó la Regla 27 de las antes transcritas. Sin embargo, tomando en consideración que los hechos ocurrieron estando el apelante fuera de servicio, *que la perjudicada provocó la situación*, que ella nunca tuvo interés en el caso, que aún continúan conviviendo, el buen historial del apelante y la buena reputación que goza el apelante consideramos que la sanción impuesta es excesiva y en su consecuencia se *modifica* la Resolución apelada, bajando la sanción a cinco (5) meses de suspensión de empleo y sueldo. (Énfasis suplido.) Apéndice I del Alegato, págs. 1–2.

## III

Reiteramos la facultad del Superintendente de la Policía para imponer como castigo la expulsión permanente del Cuerpo a todo oficial o miembro de la Policía que

---

[3] "Actuará como cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por este Capítulo, cuando el jefe o director del organismo o dependencia de que se trate les haya impuesto cualquier medida disciplinaria en relación con actuaciones cubiertas por este Capítulo, o con faltas leves en que se haya impuesto una reprimenda o suspensión de empleo y sueldo o faltas graves en el caso de miembros de la Policía o de otras agencias que tengan reglamentación similar."

incurre en falta grave. 25 L.P.R.A. sec. 1014(d). También reafirmamos la regla general de que una absolución o archivo de la denuncia durante la etapa inicial en un proceso criminal "no impide que se destituya a un funcionario o empleado público en un proceso administrativo basado en los mismos hechos que motivaron la acción criminal". *Mundo v. Tribunal-Superior*, 101 D.P.R. 302, 304 (1973). Lo contrario "[s]ería atar de manos a todo funcionario nominador y privarle de las prerrogativas que la ley le reconoce en materia de destituciones". *Cruz v. Garrido Morales*, 58 D.P.R. 653, 663 (1941). En consecuencia, aun cuando la denuncia penal por violencia doméstica presentada contra Juan San Vicente Frau fuera archivada, podía expulsársele.

■ Ciertamente, "las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción". *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Véase *Fuertes y otros v. A.R.Pe.*, 134 D.P.R. 947 (1993).([4])

Ahora bien, rechazamos la tesis propuesta por Juan San Vicente Frau, que encontró eco en la C.I.P.A., de que "no ha incurrido en conducta alguna que pueda considerarse en violación al reglamento y que si algún incidente ocurrió

---

([4]) En este aspecto recordamos que el concepto *discreción* "necesariamente ha de nutrirse de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna. Como fuente integral del proceso de decisión que contribuye a dar sentido a la ley y a concretar en la realidad derechos individuales y colectivos, el uso por excelencia de un poder discrecional, intenta establecer un balance moral entre los polos opuestos en que se debaten algunas controversias humanas: el bien y el mal; la juridicidad y la violencia; la legalidad aparente y la ventaja indebida; lo prudente y lo irrazonable; la paridad y la desigualdad; lo espiritual y lo material; lo racional y lo pasional; y, la opresión y la libertad". *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 770 (1977), opinión concurrente.

entre él [y su compañera consensual] *fue uno en el que actuó prudente y razonablemente"*. El testimonio de la perjudicada, así como la investigación administrativa, claramente reflejan lo contrario. La C.I.P.A. determinó *primero* que, en efecto, Juan San Vicente Frau agredió físicamente a su compañera y *segundo*, que ello constituía una violación *grave* al Reglamento de Personal de la Policía de Puerto Rico.

Erró, pues, la *C.I.P.A.* al sustituir la expulsión del Superintendente de la Policía por una suspensión temporal de empleo y sueldo a base de que la perjudicada "provocó la situación". El despliegue de brutalidad y violencia por parte de Juan San Vicente Frau ameritaban su expulsión como miembro de la Policía de Puerto Rico. "Nada debe estar más lejos de un hombre de ley que el amago o recurso a la violencia que es la antítesis y negación del orden jurídico. No debe [ser miembro de la Policía de Puerto Rico] quien padece estos accesos de regresión a lo primitivo. Nuestra patria tiene derecho a que sus instituciones, sus profesionales, sus gobernantes protejan la civilización de esta marea de violencia y falta de estilo que es carcoma de nuestra cultura." *In re Vázquez Báez*, 110 D.P.R. 628, 636 (1981).

El comportamiento de Juan San Vicente Frau no sólo afectó a la víctima; afectó también la imagen y reputación de la Policía ante la ciudadanía.

Por los fundamentos antes expuestos, *se dicta sentencia, se revoca a la C.I.P.A., y se confirma la determinación de expulsión que hizo el Superintendente de la Policía.*

*Se dictará la correspondiente sentencia.*

La Juez Asociada Señora Naveira de Rodón emitió una opinión de conformidad. Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri no intervinieron.

— O —

Opinión de conformidad emitida por la Juez Asociada Señora Naveira de Rodón.

Una vez más este Tribunal tiene ante su consideración un incidente de violencia doméstica en el cual uno de los protagonistas es un miembro de la Policía de Puerto Rico, un teniente. Y una vez más nos confrontamos con la total incomprensión de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. sec. 601 *et seq.*), por parte de un vital organismo administrativo, el encargado de sentar las pautas de medición que guiarán la conducta de los miembros de la Uniformada.

El que aún prevalezcan en algunos de nuestros funcionarios públicos actitudes como las que refleja el caso de autos resulta altamente preocupante.

Estamos ante un mal social endémico que le está acestando un rudo golpe a la familia puertorriqueña. Cruzarnos de brazos y no alzar nuestras voces para condenar enérgicamente la crasa ignorancia de muchos equivaldría a convertirnos en cómplices de esta intolerable situación que amenaza con socavar los mismos cimientos de la estructura familiar de incontables hogares.

En este caso el Superintendente de la Policía actuó correctamente al expulsar del Cuerpo de la Policía de Puerto Rico a un teniente que incurrió en conducta constitutiva de violación a la Ley para la Prevención e Intervención con la Violencia Doméstica, a pesar de que los cargos criminales fueron retirados por la víctima.

Por considerarlo de vital importancia para resaltar la necesidad de evitar que situaciones como ésta recurran, a continuación resumiremos los hechos pertinentes.

## I

El 23 de mayo de 1993 el Teniente de la Policía de Puerto Rico, Juan San Vicente Frau, vivía en concubinato con Ana Belky Paulino Paulino, una menor de veinte (20) años, con quien había convivido aproximadamente desde octubre de 1992. La noche de los hechos, la joven Paulino Paulino le confesó a San Vicente Frau que "le había mentido y que le había sido infiel".

Según expuesto en el recurso de revisión, éste procedió a agredirla con "puños y patadas mientras ésta se encontraba arrinconada y sin resguardo alguno. Dicha golpiza continuó aun cuando la [joven] Paulino Paulino le suplicaba no la golpeara más. Luego de la perjudicada comunicarle que tenía náuseas y que no se podía mover del dolor, y pedirle que le buscara unas pastillas para el mismo, [fue que] entonces el agresor procedió a ayudarla a acostarse, le [examinó] la espalda y le suministró unas pastillas para aliviar el dolor. Tras despertar del sueño inducido por las pastillas, la [joven] Paulino Paulino empezó a hablar con San Vicente Frau. Este le [respondió] con una nueva golpiza, [como consecuencia] de la cual requirió ser hospitalizada".

Luego de la segunda golpiza él quiso hablar con una amiga de la joven Paulino Paulino para que ésta le confirmara lo que ella le había dicho. San Vicente Frau llamó a la amiga y habló con ella y después permitió que la joven Paulino Paulino le hablara. Esta "por clave le [pudo] decir lo que [le] pasaba para que [la fueran] a recoger". Moción de Reconsideración del Superintendente de la Policía de 31 de octubre de 1994 ante la C.I.P.A.

La amiga llamó a la madre de la joven Paulino Paulino, quien tras enterarse de las agresiones sufridas por su hija acudió a socorrerla junto con la hermana de la joven y dos (2) policías. La llevaron a un hospital y al otro día fue dada de alta. El agresor fue denunciado y quedó en libertad bajo

fianza. La víctima expresó no tener interés en someter cargos por esos hechos. Finalmente, se archivó el caso y el teniente San Vicente Frau y la joven Paulino Paulino continuaron conviviendo.

Posteriormente, la Policía realizó una investigación administrativa y notificó a San Vicente Frau una resolución de cargo y la intención de expulsarlo del Cuerpo de la Policía. Tras una vista administrativa, el Superintendente de la Policía, el 17 de septiembre de 1993, le informó que había sido expulsado por faltas graves, Núms. 27 y 28 contenidas en el Art. 14, Sec. 14.5 del Reglamento de Personal de la Policía de Puerto Rico, pág. 103.

San Vicente Frau apeló la determinación de expulsión ante la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.).([1]) En un escueto escrito de apelación, la representación legal de San Vicente Frau argumentó "que el apelante de epígrafe no ha incurrido en conducta alguna que pueda considerarse en violación del Reglamento de la Policía de Puerto Rico y específicamente no ha incurrido y, por consiguiente, no cometió los hechos que se le imputan en la Resolución de Cargos del 8 de julio de 1993, por lo que su expulsión es totalmente improcedente. Que si algún incidente ocurrió entre el apelante y la señora Ana B. Paulino fue uno en el que el apelante actuó prudente y razonablemente en el que puede considerarse en protección de su seguridad personal".

La C.I.P.A., mediante resolución notificada el 10 de octubre de 1994, determinó que:

> De la prueba ante nos, concluimos que la conducta del apelante violó la Regla 27 de las antes transcritas. Sin embargo, *tomando en consideración que los hechos ocurrieron estando el*

---

([1]) El Art. 2 de la ley que creó la Comisión de Investigación, Procesamiento y Apelación, 1 L.P.R.A. sec. 172(2), establece la facultad apelativa que le autoriza a confirmar, revocar o modificar una determinación de la Policía de Puerto Rico. Véase, también, la Sec. 173(3)(2), sobre jurisdicción exclusiva para actuar como cuerpo apelativo de decisiones del Superintendente de la Policía sobre medidas disciplinarias a un miembro del Cuerpo.

*apelante fuera de servicio, que la perjudicada provocó la situación, que ella nunca tuvo interés en el caso, que aún continúan conviviendo, el buen historial del apelante y la buena reputación que goza el apelante* consideramos que la sanción impuesta es excesiva y en su consecuencia se modifica la Resolución apelada, bajando la sanción a cinco (5) meses de suspensión de empleo y sueldo. (Énfasis suplido.)

Inconforme, la Policía solicitó revisión de la resolución al Tribunal Superior.[2] Alegó la comisión de dos (2) errores:

Erró la Comisión de Investigación, Procesamiento y Apelación al revocar la determinación de expulsión emitida por el Superintendente de la Policía de Puerto Rico, en contra de la parte apelante-recurrida.

Erró la Comisión de Investigación, Procesamiento y Apelación al revocar la determinación de expulsión emitida por el Superintendente de la Policía de Puerto Rico, en contra de la parte apelante-recurrida y negarse a realizar determinaciones de hecho adicionales de conformidad con la evidencia contenida en récord.

## II

La violencia es uno de los problemas más serios y alarmantes que aqueja al pueblo puertorriqueño, al punto que ante el enorme sentido de inseguridad personal hemos ido perdiendo sociabilidad y con ello cierto grado de urbanidad, violentando las bases de la vida comunitaria y generando respuestas de enfrentamiento fundamentadas en la pérdida de la confianza en los demás. Sin embargo, solemos atribuir la violencia únicamente al delincuente "común", que proviene usualmente de las clases desposeídas, y cerramos los ojos ante las múltiples formas de violencia de las que somos partícipes o testigos, minimizando su importancia para adjudicar la responsabilidad de los males

---

[2] El recurso de revisión se presentó ante el Tribunal Superior, pero por virtud de lo dispuesto en el Art. 9.004 de la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 23f) y la Orden Administrativa Núm. XII de 23 de enero de 1995 (4 L.P.R.A. Ap. XXIII), sobre recursos de revisión pendientes ante la consideración del Tribunal Superior, el mismo nos fue remitido.

de nuestra sociedad a otros. Tanto es así que no fue hasta 1989 que la violencia doméstica, sufrida particularmente por las mujeres, se vino a concebir real y efectivamente, al menos en el plano jurídico, como un delito en sus diversas manifestaciones: física, sexual y psicológica.[3]

Mediante la Ley Núm. 54, *supra,* el Legislador puertorriqueño reconoció que la violencia doméstica atenta contra la integridad de la familia, tanto la tradicional como la no tradicional, y amenaza la estabilidad y la preservación de la convivencia civilizada de nuestro pueblo. Adoptó, como política pública del Gobierno de Puerto Rico, "atender las dificultades que las situaciones de violencia doméstica presentan, particularmente a mujeres y menores para preservar su integridad física y emocional, procurar su seguridad y salvar sus vidas". Art. 1.2 de la Ley Núm. 54, *supra,* 8 L.P.R.A. sec. 601. Para esto creó un procedimiento especial criminal que "propici[a] el desarrollo, establecimiento y fortalecimiento de remedios eficaces para ofrecer protección y ayuda a las víctimas, alternativas para la rehabilitación de los ofensores y estrategias para la prevención de la violencia doméstica". Íd.

Posteriormente, en *Pueblo v. González Román,* 129 D.P.R. 933, 945–946 (1992), resolvimos que "en nuestra jurisdicción es admisible en evidencia, al amparo de las disposiciones de la Regla 52 de Evidencia, 32 L.P.R.A. Ap. III, testimonio pericial sobre el 'síndrome de la mujer maltratada' dentro del contexto, y como complemento, de la

---

[3] La violencia doméstica se manifiesta de diversas maneras: (1) la violencia física, que consiste en agresiones en forma de golpes, patadas, en fin agresiones físicas de todo tipo y gravedad; (2) la violencia sexual, que consiste en actos de violación y sodomía mediante la fuerza y la intimidación o en otros actos sexuales no consentidos; (3) la violencia emocional, que incluye intimidación, uso de palabras ofensivas, degradación, soledad obligada, esclavización y coerción. Véanse: Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico, San Juan, Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, Tribunal Supremo de Puerto Rico, 1995, págs. 319–320 (en adelante El discrimen por razón de género); Manual sobre violencia doméstica, Oficina Asuntos de la Mujer, Municipio de San Juan, 1995, pág. 2 (en adelante Manual sobre violencia doméstica).

prueba sobre defensa propia, *siempre y cuando* que se demuestre, a satisfacción del tribunal de instancia, que efectivamente se trata de un caso de 'mujer maltratada', hecho que podrá ser establecido por prueba directa de ello o mediante la presentación en evidencia de una evaluación sicológica". Véase, además, *Pueblo v. González Román*, 138 D.P.R. 691 (1995).

A pesar del alto número de casos de violencia doméstica, y de ser éste un problema que trasciende líneas raciales, económicas y sociales,[4] los fuertes patrones culturales, producto de muchos años de un ordenamiento social que implícitamente justificaba el que los hombres fueran violentos contra la mujer, son responsables de que los delitos que se conciben como graves y serios cuando se dan dentro del marco general de la sociedad no se vean tan graves y serios cuando se dan en el ámbito de la familia. La situación de violencia y maltrato, en innumerables ocasiones, es clasificada como un problema marital o una disputa pasional. Informe sobre el discrimen por razón de género en los tribunales, San Juan, Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, Tribunal Supremo de Puerto Rico, 1995, págs. 319–323 (en adelante El discrimen por razón de género). Peor aún, muchos interpretan que el hombre que

---

(4) Basta leer los periódicos diariamente para tener una imagen parcial del alto índice de crímenes relacionados con violencia sufrida por mujeres de parte de esposos, ex esposos, amantes o amigos. *Pueblo v. Esmurria Rosario*, 117 D.P.R. 884, 890 (1986). Datos concretos del Departamento de Servicios Sociales reflejan que durante el Año Fiscal 1993–1994 en Puerto Rico se informaron 18,000 incidentes de violencia doméstica, en el 93% de éstos las víctimas fueron mujeres. En cuanto al número de casos graves presentados ante nuestros tribunales, las estadísticas de la Rama Judicial para 1993–1994 reflejan un total de 37,962; de éstos, 3,329 o un 8% correspondían a casos de violencia doméstica. El número real de incidentes de violencia doméstica supera las estadísticas porque este tipo de conducta muchas veces no trasciende las fronteras del núcleo familiar, no se presentan querellas o los delitos de violencia doméstica se rebajan a meras agresiones. El discrimen por razón de género, *supra*, págs. 318–319. Véanse, además: Y. Díaz Pérez y D.G. Knudson, Que nadie se entere: estudio sobre las características de las familias en las que ocurre el maltrato a la esposa en Puerto Rico, Escuela Graduada de Trabajo Social, Universidad de Puerto Rico, 1984; *Pueblo v. Esmurria Rosario*, supra, opinión disidente del Juez Asociado Señor Hernández Denton; *Pueblo v. Lacroix Correa*, 127 D.P.R. 557 (1990).

reacciona en forma violenta contra la mujer debe tener alguna razón para ello. Íd., pág. 323.[5]

Los organismos y funcionarios responsables de proteger a las víctimas de agresión, como son los funcionarios del Sistema Judicial y el personal de apoyo del ejecutivo, incluyendo los jueces, fiscales y miembros del Cuerpo de la Policía de Puerto Rico, no estamos libres de actitudes contrarias a la política pública sobre el problema de violencia doméstica. Por ejemplo, entre algunos de los funcionarios del Sistema Judicial se ha encontrado que existen, entre otras nociones: (1) que las víctimas de la violencia doméstica merecen las agresiones que reciben porque de alguna manera las provocan u ocasionan; (2) que las víctimas de violencia doméstica no deben protestar por la violencia recibida, pues reciben en cambio una buena cantidad de beneficios por parte de los agresores; (3) que las mujeres víctimas de violencia doméstica no merecen ayuda en los tribunales porque una amplia proporción de ese conjunto retira los cargos una vez radicados, y (4) que muchas de las víctimas no merecen ayuda de los tribunales porque no se separan permanentemente del esposo o compañero maltratante. *New Jersey Advisory Committee* del *United States Civil States Rights Commission (1982)*, según citado en El discrimen por razón de género.

Cabe señalar que en el Primer Informe de Progreso sobre la Implantación en Puerto Rico de la Ley para la Prevención e Intervención con la Violencia Doméstica: Ley Núm. 54 de 15 de agosto de 1989 (en adelante Informe), preparado por la Comisión de Asuntos de la Mujer, Oficina del Gobernador, 1991, funcionarios de la Policía evaluaron negativamente la citada Ley Núm. 54 y mencionaron que el problema de violencia doméstica no lo puede resolver la mencionada Ley Núm. 54 (en opinión de algunos, la ley lo que ha hecho es empeorar el problema), unido al señala-

---

[5] Véase, además, Manual sobre violencia doméstica, *supra*, págs. 2–3, sobre los mitos y las realidades en torno a la violencia doméstica.

miento, a veces directo y en otras ocasiones implícito, de que la violencia doméstica no es un problema criminal, sino que se trata de un problema social.

Dicho informe concluye que:

...El factor que más ha afectado el progreso en la implantación de esta Ley ha sido el poco apoyo que ha recibido la misma desde las posiciones de liderato que ocupan las\los funcionarios de más alto nivel de las agencias del Sistema de Administración de la Justicia. Las actitudes y opiniones de los/as líderes del Sistema han contribuido a crear confusión interna entre los funcionarios públicos llamados a hacer cumplir esta Ley en su trabajo diario y entre la ciudadanía. Esta situación coloca en mayor riesgo a las víctimas reales y potenciales de la violencia doméstica ya que pueden continuar viendo al Sistema en cierta medida, aliado del agresor y pueden sentirse disuadidas de utilizar los remedios que la Ley intentó poner a su alcance. El interés prematuro de los/as líderes de las agencias del Sistema de Administración de la Justicia en que se enmiende el estatuto (en diversos y sustanciales aspectos y sin darle la oportunidad a que verdaderamente funcione), ha prevalecido por encima de la obligación legal y del deber ministerial de estos/as funcionarios/as para con la promoción y el respaldo de una vigorosa política pública dirigida hacia el progreso en su implantación. Informe, pág. 172.

En incontables ocasiones la propia víctima de maltrato piensa, consciente o subconscientemente, que los golpes y las agresiones verbales son parte de su obligación marital; cree que nadie la puede ayudar a resolver su problema, excepto ella misma; se siente responsable de la conducta del agresor, y abriga esperanzas de que la agresión no volverá a repetirse. Manual sobre violencia doméstica, Oficina Asuntos de la Mujer, Municipio de San Juan, 1995, págs. 4-5. Estas actitudes son responsables del problema que con mayor frecuencia señalan los funcionarios del Sistema de Administración de la Justicia respecto a la citada Ley Núm. 54: el retiro de cargos o la falta de interés en proseguir los casos criminalmente por parte de las perjudicadas. Informe, *supra*, págs. 170-171.

Ya en *Pueblo v. Esmurria Rosario*, 117 D.P.R. 884, 893–894, habíamos expresado que:

> Los jueces somos la última autoridad en el sistema judicial. Si no logramos manejar los casos de violencia, en este caso en específico contra la mujer, con el enfoque e interés judicial apropiados, corremos el peligro de hacer que estos crímenes sean considerados como algo trivial e insignificante. Por tales motivos, los jueces no podemos ignorar la seriedad de estos crímenes, en particular, los cometidos contra las mujeres. Restarles importancia limitaría la efectividad de la intervención judicial en este tipo de casos y agravaría un ya ingente problema social.

Por lo tanto, nos corresponde, como máximo foro del Sistema Judicial, responder asertivamente ante esta situación. Debemos cobrar conciencia de que en la medida en que seamos débiles ante el tratamiento de casos de violencia doméstica y la actitud negativa de aquéllos llamados a insuflarle vida a esta esencial política pública, continuará la ambigüedad y apatía en los tribunales inferiores, en el Cuerpo de la Policía y en los funcionarios que directa o indirectamente intervienen con las víctimas y con los agresores. Sólo con nuestro liderato podremos evitar que se continúe agravando el problema que ya parece haberse convertido en endémico en nuestra sociedad.

### III

En el esquema para combatir la violencia doméstica, la Policía de Puerto Rico resulta ser instrumento medular, ya que es el organismo encargado de "proteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, prevenir, descubrir y perseguir el delito y, dentro de la esfera de sus atribuciones compeler obediencia a las leyes y reglamentos que conforme a éstos se promulgan". Art. 3 de la Ley Núm. 26 de 22 de agosto de 1974, Ley de la Policía de Puerto Rico de 1974 (25 L.P.R.A. sec. 1003).

Específicamente, la Ley Núm. 54, *supra*, ordena la intervención policiaca en casos de violencia doméstica y le asigna a los funcionarios del orden público ciertas tareas para poner en vigor dicha ley. Por ejemplo: la Policía de Puerto Rico tiene que ofrecer protección adecuada a la parte en cuyo beneficio se expide una orden de protección. Art. 2.7 de la Ley Núm. 54, *supra*, 8 L.P.R.A. sec. 627(d). Además, todo oficial del orden público deberá efectuar un arresto, aunque no medie una orden a esos efectos, si tuviese motivos fundados para creer que la persona a ser arrestada ha cometido, aunque no fuese en su presencia, o está cometiendo en su presencia, una violación a las disposiciones delictivas de la mencionada ley. Art. 3.8 de la Ley Núm. 54, *supra*, 8 L.P.R.A. sec. 638. También deberá tomar las medidas necesarias para evitar que una persona maltratada vuelva a ser víctima de agresión. Art. 3.10 de la Ley Núm. 54, *supra*, 8 L.P.R.A. sec. 640.[6] Por último, deberá presentar un informe escrito sobre los incidentes de violencia doméstica aunque no se radiquen cargos criminales contra el alegado agresor. Art. 3.11 de la Ley Núm. 54, *supra*, 8 L.P.R.A. sec. 641.

Por otra parte, el Reglamento de Personal de la Policía de Puerto Rico establece cuáles son las obligaciones, las

---

[6] Dicho artículo dispone que un oficial del orden público deberá asistir a las víctimas de maltrato doméstico de las formas siguientes:

"(a) Si la persona indica que ha sufrido daños, golpes o heridas que requieren atención médica, aunque no sean visibles, administrará a la persona la primera ayuda necesaria, le ofrecerá hacer arreglos para que reciba tratamiento médico adecuado y le proveerá transportación hasta un centro de servicios médicos donde puede ser atendida.

"(b) Si la persona manifiesta preocupación por su seguridad, deberá hacer los arreglos necesarios para transportarla a un lugar seguro.

"(c) Cuando la víctima de maltrato se lo solicite, le proveerá protección acompañándola y asistiéndola en todo momento mientras retira sus pertenencias personales de su residencia o de cualquier otro lugar donde éstas se encuentren.

"(d) Asesorará a la víctima de maltrato sobre la importancia de preservar la evidencia.

"(e) Proveerá a la víctima información sobre sus derechos y sobre los servicios gubernamentales y privados disponibles para víctimas de maltrato, incluyendo, pero no limitado a, los remedios provistos bajo las secs. 972 *et seq*. del Título 25 y la Ley Núm. 91 de 13 de julio de 1988. Asimismo, le entregará copia de una hoja de orientación a víctimas de violencia doméstica." 8 L.P.R.A. sec. 640.

responsabilidades y la conducta de sus miembros y cualquier asunto necesario para el funcionamiento del Cuerpo. Art. 7 de la Ley de la Policía de Puerto Rico, *supra*, 25 L.P.R.A. sec. 1007. Faltas graves al reglamento pueden castigarse con la expulsión permanente, degradación o suspensión del Cuerpo sin sueldo por un período no mayor de cinco (5) meses. Art. 14 de la Ley de la Policía de Puerto Rico, *supra*, 25 L.P.R.A. sec. 1014(d); Art. 14, Sec. 14.3(2)(a) del Reglamento de Personal de la Policía de Puerto Rico, *supra*, pág. 96.

En el caso de autos, la Policía realizó una investigación administrativa sobre la conducta del teniente San Vicente Frau y concluyó que éste ameritaba ser expulsado de la Uniformada por violar las disposiciones Núms. 27 y 28, contenidas en el citado Art. 14, Sec. 14.5 del Reglamento de Personal de la Policía de Puerto Rico, *supra*, pág. 103, que constituyen las faltas graves:

> 27. Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía.
> 28. Vivir en concubinato.([7])

También se le imputó el incumplimiento de deberes y responsabilidades, según se establecen en los incisos 1, 3 y 5 del Art. 5, Sec. 5.2 del citado reglamento:

> 1. Proteger la vida y propiedad, impedir el crimen y el desorden.
>
> .    .    .    .    .    .    .    .
>
> 3. Cumplir y velar por el cumplimiento de las leyes, reglamentos y ordenanzas municipales.
> 4. Observar en todo momento una conducta ejemplar.

Posteriormente, en el desempeño de su función judicial, la C.I.P.A. celebró vistas y recibió prueba que evaluó sobre la conducta del Teniente San Vicente Frau. En su resolución la C.I.P.A. determinó los hechos en los cuales incurrió

---

([7]) Por el resultado al que se llega, no fue necesario discutir esta falta sobre la prohibición de vivir en concubinato.

el Teniente San Vicente Frau. Estos, claramente, son constitutivos de las faltas graves imputadas. La C.I.P.A. encontró probada la agresión que sufrió la joven Paulino Paulino, de apenas veinte (20) años, por parte del Teniente San Vicente Frau, con quien convivía hacía aproximadamente un (1) año.[8] No obstante, aún frente a estos hechos incontrovertidos, modificó la decisión del Superintendente de expulsar a San Vicente Frau del Cuerpo de la Policía, rebajando la sanción a cinco (5) meses de suspensión. Entre otras razones entendió como atenuantes que *la perjudicada provocó la situación, el agresor estaba fuera de servicio y la víctima nunca tuvo interés en radicar cargos contra San Vicente Frau, demostrativo de ello es que todavía conviven.*

Aunque reiteradamente hemos sostenido que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto y que su revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción, *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975); *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87 (1974); *Rodríguez v. Comisión Industrial*, 99 D.P.R. 368 (1970); *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966), en esta ocasión debemos revocar a la C.I.P.A. Este organismo abusó de su discreción al modificar la decisión de expulsión que dictó el Superintendente de la Policía. La seriedad de los hechos probados, en particular las agresio-

---

[8] Aunque no se presentaron cargos criminales, además de ser una conducta contraria al Reglamento de la Policía, las actuaciones de San Vicente Frau son constitutivas de delito. Los Arts. 3.1 y 3.2 de la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (8 L.P.R.A. secs. 631 y 632), tipifican como delito el maltrato. En estos artículos se prohíbe la utilización de fuerza física, violencia psicológica, intimidación o persecución contra la persona con quien se cohabita o se haya sostenido una relación de pareja. Acogemos la interpretación que hace la Comisión Judicial Especial para Investigar el Discrimen por Género en los Tribunales sobre la equivocada percepción de que el delito de maltrato requiere un patrón de conducta constante. El discrimen por razón de género, *supra*, págs. 335–340.

nes, y que la conducta dentro del ámbito doméstico del Teniente San Vicente Frau, aunque no culminó en una convicción criminal por falta de interés de la víctima, está en contravención con una política pública de gran importancia y envergadura que trata de bregar con un problema que amenaza con socavar los mismos cimientos de nuestra organización social, la familia, concebida ésta en sus términos más amplios.

La joven Paulino Paulino fue víctima de violencia doméstica, de dos (2) severas agresiones por parte de un oficial de la Policía, un teniente, una figura de autoridad, un hombre mayor de edad, con el que convivía hacía apenas un (1) año. Esto constituyó, sin duda, una violación al Reglamento de Personal de la Policía de Puerto Rico que sanciona toda "conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía". Art. 14, Sec. 14.5, inciso 27 del Reglamento de Personal de la Policía de Puerto Rico, *supra*, pág. 103. No podemos permitir, bajo las circunstancias del caso de autos, que un teniente de la Policía que tiene el deber de "[p]roteger la vida y propiedad, impedir el crimen y el desorden", "[p]revenir, descubrir y perseguir el delito" y "[c]umplir y velar por el cumplimiento de las leyes", permanezca en el Cuerpo de la Policía. Art. 5, Sec. 5.2, incisos 1, 2 y 3 del Reglamento de Personal de la Policía de Puerto Rico, *supra*, pág. 14.

La conducta del Teniente San Vicente Frau, que tipifica un delito al amparo de la Ley Núm. 54, *supra*, denota un total desprecio a una importante política pública del Estado, independientemente de que la víctima retirara los cargos. Esto justifica su expulsión del Cuerpo de la Policía. ¿Acaso se le permitiría agredir a un ciudadano en la calle y permanecer en el Cuerpo? ¿Por qué minimizar una agresión por ser ésta dirigida contra su compañera? No podemos imaginar cómo este señor podría cumplir con las obligaciones que impone la citada Ley Núm. 54 a los funcion-

arios de la Policía al enfrentar situaciones de violencia doméstica similares a la que él ya incurrió y que creyó justificada.

En este caso, más allá de la negativa generalizada a concebirnos a nosotros mismos como responsables de actos de violencia, concebir los actos propios como violentos, o permitir los mismos con una actitud pasiva, está el trasfondo histórico de una visión patriarcal de la sociedad que informa, incluso, la concepción que muchas mujeres tienen del papel que les toca desempeñar en un mundo dominado por los hombres. Aceptar que existen patrones sexistas que son discriminatorios y atentan contra la dignidad de las mujeres vendría a ser, para algunos hombres, un reconocimiento de que las han vejado y supeditado históricamente sin base alguna para sostener la justificación que han dado para ello: la supuesta inferioridad de las mujeres.

Aceptar que la violencia doméstica no es una conducta que merezca la expulsión del Cuerpo de la Policía implicaría reconocer que los hombres tienen privilegios naturales y jurídicos sobre las mujeres. Sería reconocer el carácter de naturaleza propietaria que algunos hombres creen tener sobre la mujer. Esto, después de todo, es lo que constituye la justificación del razonamiento de la C.I.P.A., de que ella lo provocó al informarle que había tenido relaciones íntimas con otro hombre, o sea, había permitido que otro hombre hiciese uso de lo que, aparentemente, el Teniente San Vicente Frau consideraba su propiedad. Al analizar el problema hay que ser conscientes que uno de los problemas graves que presenta la negativa de algunos a concebir las cosas como realmente son y a aceptar responsabilidades por la violencia propia es la posible socialización de quienes nos rodean en prácticas de violencia. Los niños y las niñas que están en proceso de formación son especialmente susceptibles a este tipo de socialización.

El modelaje primario es un factor importante en las respuestas de las personas. La violencia observada o experi-

mentada en los hogares o por las figuras públicas o de autoridad da origen a más violencia de parte de quienes la observaron o experimentaron.(⁹) Estudios recientes realizados en Estados Unidos señalan que la violencia familiar constituye una de las principales causas de la delincuencia juvenil. Es oportuno recordar nuevamente que aquélla se da en todas las estratas sociales y en todos los niveles socioeconómicos, por lo que esta última pende como espada de Dámocles sobre cada familia puertorriqueña en cuyo seno se produzca ese tipo de agresión física o síquica.

Este Tribunal debe sentar la pauta para que los funcionarios judiciales y los funcionarios del ejecutivo encargados del orden público no minimicen la importancia de la Ley para la Prevención e Intervención con la Violencia Doméstica y evadan su responsabilidad de hacerla cumplir. No podemos voltear la cara pretendiendo que la violencia es un problema de los demás.

Quisiéramos recalcar que resulta altamente preocupante el que la decisión de un organismo como la C.I.P.A., que interviene en los procedimientos disciplinarios de la Policía y que con sus decisiones sienta las pautas de medición que guiarán el comportamiento de los miembros de la Uniformada, refleje una incomprensión tan crasa de la política pública que entraña la citada Ley Núm. 54. Concluir, de forma unánime como lo hizo la C.I.P.A., que son factores atenuantes que disminuyen la nocividad de la conducta de un teniente de la policía que agrede a su compañera el que la perjudicada, una menor de veinte (20) años, provocó la agresión al decirle a éste que le había sido infiel y el que luego no quisiera formularle cargos, a una figura de auto-

---

(⁹) La violencia contra la mujer en muchas ocasiones también genera violencia contra otros miembros de la familia. Los niños resultan ser especialmente vulnerables a este tipo de conducta. Sobre este particular, recientemente en un periódico local apareció el siguiente titular en primera plana: "Gobierno Investiga sobre 46 mil Casos Maltratos de Menores." *TODO*, Carolina—Área Metropolitana, 17 de julio de 1996.

ridad como lo es San Vicente Frau, un hombre mayor de edad, su concubino y teniente de la policía, denota una ignorancia tal del problema de violencia doméstica que no podemos hacer menos que hacer constar nuestro más enérgico repudio a la misma.

Por todo lo antes expuesto, damos nuestra conformidad a la opinión *Per Curiam* que hoy emite el Tribunal.