Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>ALBERTO LUIS RIVERA POMALES<br><br>Recurrido | KLCE202401143 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Crim. Núm.<br>F LA2024G0077<br>F LE2024G0122 AL 0125<br>F VI2024G0017-18<br><br>Por:<br>Art. 6.06, 3.2 y Tent. Art. 93 (2) |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de noviembre de 2024.

A solicitud de la defensa, el Tribunal de Primera Instancia ("TPI") autorizó a un acusado de tentativa de asesinato, violencia doméstica, maltrato de menores y Ley de Armas, *infra*, a que, mientras está bajo fianza y bajo supervisión electrónica, pueda trabajar tres noches a la semana en un club nocturno ubicado a menos de treinta (30) minutos del lugar de residencia de la víctima principal de los delitos imputados.  Según se explica en detalle a continuación, concluimos que erró el TPI, pues el lugar de trabajo está dentro de la zona de exclusión pertinente y no se demostró que exista alguna circunstancia que justificara, de manera excepcional, permitirle al imputado, de forma rutinaria, ingresar en dicha zona.

I.

Por hechos acontecidos entre el 31 de mayo de 2024 y el 1 de junio de 2024, el Ministerio Público formuló siete (7) *Denuncias* en contra del Sr. Alberto L. Rivera Pomales (el "Imputado").  Según las denuncias, el Imputado incurrió en **tentativa de asesinato** en

primer grado, en la modalidad de feminicidio, Artículo 93(e) y (11) del Código Penal, 33 LPRA sec. 5142; infracción a los Artículos 3.2(d) (maltrato agravado) y 3.3 (maltrato mediante amenaza) de la **Ley Núm. 54** de 15 de agosto de 1989, según enmendada, conocida como Ley para la Prevención e Intervención con la Violencia Doméstica ("Ley 54"), 8 LPRA secs. 632 y 633; infracción al Artículo 53(b), sobre maltrato en su modalidad de violencia doméstica en presencia de menores de edad, de la Ley 57-2023, conocida como **Ley para Prevención del Maltrato**, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores ("Ley 57"), 8 LPRA sec. 1734; y por infracción al Artículo 6.06, sobre portación y uso de arma blanca, de la Ley 168-2019 ("**Ley de Armas**"), 25 LPRA sec. 466e.

En específico, se le imputó que, el 31 de mayo de 2024, a las **11:00 pm**, persiguió e interceptó a su exesposa, la Sra. Aransazu Adorno Rivera (la "Víctima"), mientras esta conducía un vehículo de motor en presencia de los hijos menores de edad de esta. Además, que, al día siguiente, **a las 4:00 am**, le manifestó a la Víctima que la iba a matar, "que era una hija de la gran puta, que, si no era de él, no era de nadie", y que **la apuñaló repetidamente con un cuchillo en presencia de menores de edad**.[1]

**El Imputado renunció por escrito a la vista preliminar**. El 2 de junio, bajo juramento, el imputado reiteró su renuncia. Consecuentemente, el TPI encontró causa probable para juicio por los delitos imputados.

En cuanto a la imposición de fianza, el TPI impuso la suma de $10,000.00 por cada cargo para un total de $70,000.00. Además, entre las medidas cautelares que condicionaron la libertad provisional del Imputado, se le impuso supervisión electrónica, tipo

---

[1] Véanse, *Denuncias,* Apéndice II, págs. 6-19.

arresto domiciliario (*lockdown*), de lunes a domingo.  Se dispuso que, "de ser necesario o requerido, se autorizará horario de salida para que asista a evaluación, tratamiento y/o en las áreas de salud mental, adicción, relaciones familiares y de pareja, u otros.  De proveer evidencia de trabajo o de estudio se le podrá reconsiderar su horario de restricción".[2]  Además, el TPI expidió una orden de protección con vigencia de seis (6) meses a favor de la Víctima, a tenor con lo dispuesto en el Artículo 2.1 de la Ley 54, 8 LPRA sec. 621.

El 13 de junio, el Imputado interpuso una *Moción sobre Modificación de Condiciones*.  En síntesis, solicitó que se permitiera trabajar fuera del hogar de martes a jueves en **horario nocturno de 8:00 pm a 8:00 am.**  Expuso que había trabajado con *Bulon Group* en dicho horario por los pasados catorce (14) años, bajo la supervisión del Sr. Jacob Zaidspiner.[3]

El 20 de junio, el Programa de Servicios con Antelación al Juicio (PSAJ) presentó una *Moción Informativa Urgente Expresando Posición del PSAJ sobre: Moción sobre Modificación de Condiciones*.  PSAC expuso que la solicitud de modificación de condiciones del arresto domiciliario presentada por el Recurrido **no cumplía con lo establecido en el Protocolo Intergubernamental de Violencia Doméstica (el "Protocolo") en cuanto al lugar de empleo y las zonas de exclusión**.  En específico, la distancia del empleo a dos de las zonas de exclusión provistas por la perjudicada[4] no cumplían con la distancia requerida de al menos treinta (30) minutos.  Además, informó que **la Víctima manifestó temor por su vida.  Por lo anterior, PSAJ se opuso a la modificación solicitada**.

---

[2] Apéndice III del recurso, pág. 22.
[3] Apéndice IV, pág. 27.
[4] La residencia de la víctima y la residencia de su madre.

El 25 de junio, el Ministerio Público instó una *Moción en Contestación sobre Modificación de Condiciones y Moción Informativa Urgente Expresando Posición del PSAJ.* Básicamente, se opuso a la solicitud del Imputado, ello debido a que el lugar de empleo no cumple con las condiciones sugeridas por el PSAJ y establecidas por el TPI. Enfatizó que el lugar de trabajo propuesto se encuentra dentro de la zona de exclusión del Protocolo. Además, indicó que la naturaleza del negocio, **un club nocturno de entretenimiento para adultos, en donde se venden bebidas alcohólicas**, expone al imputado a un ambiente que no contribuye a que este observe las condiciones que le fueron impuestas para la libertad provisional. Añadió que la Víctima se había opuesto a la solicitud y había manifestado sentir temor por su vida.

El 30 de julio, luego de presentadas las acusaciones, el Imputado reiteró su petición de modificación de condiciones del arresto domiciliario, mediante una *Moción sobre Modificación de Condiciones*.

Por su parte, el 31 de julio, el PSAJ presentó una *Moción Modificación de Condiciones Permiso para Trabajar*. En síntesis, expresó que se pudo corroborar la información contenida en la certificación emitida por el patrono. Ello a través del Sr. Jacob Zaidspiner, supervisor del Imputado, quien, además, refirió "la necesidad de que el acusado retorne a su empleo". Planteó que el Imputado cubre todos sus gastos personales y ordinarios, incluida la residencia donde vive la Imputada con sus hijos. **En cuanto a la distancia entre el club nocturno y el lugar de residencia de la Víctima, indicó que, en horario nocturno, tiene un margen de 22 a 25 minutos. De la residencia de la madre de la perjudicada, la distancia fluctúa entre 15 y 16 minutos**. Añadió que la Víctima

fue orientada en torno la aplicación *Empower*,[5] pero <u>no</u> se había coordinado una cita con el personal del PSAJ para la instalación del programa. A pesar de todo lo anterior, recomendó que se le concediera al Imputado la modificación del arresto domiciliario, según solicitado.

El 1 de agosto, el TPI notificó una *Orden* mediante la cual acogió la solicitud de modificación de condiciones del arresto domiciliario. En síntesis, autorizó al Imputado a trabajar en el club nocturno para adultos de martes a jueves, desde las 8:00 pm hasta las 8:00 am.

En igual fecha, el Ministerio Público incoó una *Moción en Contestación a Mociones sobre Modificación de Condiciones y Solicitud de Reconsideración*. De entrada, planteó que el TPI no le dio oportunidad de expresar su postura en cuanto a la segunda solicitud presentada por el Imputado. Se opuso a que se modificaran las condiciones del arresto domiciliario. El 6 de agosto, el TPI emitió una escueta *Orden*, en la cual declaró *No Ha Lugar* la *Moción en Contestación* instada por el Ministerio Público.

El 7 de agosto, el Ministerio Público solicitó la reconsideración en torno a dicha *Orden*; además, solicitó que se celebrase una vista en torno a la modificación de las condiciones del arresto domiciliario.

La vista fue celebrada el 26 de agosto. Sin terminar el desfile de testimonios, el TPI, en corte abierta, adelantó que mantendría las modificaciones concedidas al arresto domiciliario.[6] En igual fecha, el Ministerio Público solicitó la determinación del tribunal por escrito.

---

[5] *Empower* es una aplicación que se instala en los teléfonos móviles para alertar a víctimas y sobrevivientes de violencia de género que su agresor ha quebrantado los parámetros de la zona de exclusión.

[6] Regrabación de la vista del 26 de agosto de 2024 ("Regrabación"), min. 23:42-25:07.

El 19 de septiembre, el TPI notificó una *Minuta-Resolución* (el "Dictamen")[7], mediante la cual dicho foro se reiteró en su determinación de permitir al Imputado trabajar tres noches a la semana en el club nocturno.

El 21 de octubre (lunes), el Ministerio Público, por conducto de la Oficina del Procurador General, presentó el recurso que nos ocupa; formula el siguiente señalamiento de error:

> El Tribunal de Primera Instancia erró en derecho y abusó de su discreción al modificar la condición de *lockdown* 24/7 impuesta al recurrido como condición para la libertad bajo fianza, concediéndole un permiso para trabajar sin hacer una evaluación de riesgos, aun cuando la víctima siente temor por su vida y el lugar de empleo está dentro del área de exclusión establecida en el Protocolo Intergubernamental de Violencia Doméstica.

El 23 de octubre, le ordenamos al Imputado mostrar causa por la cual no debíamos expedir el auto solicitado y revocar el Dictamen.

El Imputado compareció; arguye que PSAJ recomendó que se concediera su solicitud, que la Víctima no declaró en la vista, por lo que debía inferirse que no se opone a la referida solicitud, que el Ministerio Público no demostró que lo solicitado implique riesgo alguno para la Víctima, y que el TPI está autorizado para ignorar la distancia que el Protocolo exige exista entre él y las zonas de exclusión pertinentes. El Imputado también sostiene que lo pretendido por el Ministerio Público conllevaría que este quede sujeto a una "detención parcial", como si estuviera en una institución penal, lo cual está prohibido por ley. Resolvemos.

II.

La Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico establece que "todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo

---

[7] Véase, *Minuta Resolución Enmendada*, Apéndice I del recurso, ´pág. 3.

condenatorio". Art. II, Sec. 11, LPRA, Tomo 1. El derecho a la fianza está íntimamente ligado a la presunción de inocencia. *Pueblo v. Colón*, 161 DPR 254, 260 (2004). Por tanto, "en nuestra jurisdicción —distinto a la federal— no se puede legislar para autorizar la detención preventiva sin derecho a fianza." Íd., citando a E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, Vol. II, Sec. 17.4, pág. 472. El propósito de la fianza antes de la condena es asegurar la presencia del acusado en las diversas etapas del juicio. *Pueblo v. Soto Ortiz*, 151 DPR 619, 625-626 (2000); *Pueblo v. Negrón Vázquez*, 109 DPR 265, 266-267 (1979).

Con el objetivo de "proteger tanto al individuo como a la sociedad", la Asamblea Legislativa ha reglamentado ampliamente el derecho a la fianza. Exposición de Motivos, Ley 190 de 22 de diciembre de 2009 (Ley 190-2009). En específico, "a base de un balance de intereses, estableció en las Reglas 6.1 y 218 de las de Procedimiento Criminal unos parámetros para la fijación de la cuantía y la imposición de condiciones...". Exposición de Motivos, Ley 190-2009.

Así pues, las Reglas 6.1 y 218 de las de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.1 y R. 218, según enmendadas, constituyen el "eje central alrededor del cual gravita el poder o facultad de los tribunales de instancia para fijar, aceptar, y revisar la prestación de fianzas en casos criminales en el descargo del mandato contenido en la Constitución". *Pueblo v. Morales Vázquez*, 129 DPR 379, 386-387 (1991).

Mediante la Ley 190-2009 se establecieron "condiciones más restrictivas a la fianza que un juzgador vaya a imponer a personas imputadas de ciertos delitos graves o de carácter violento. Ello, ante el peligro que representa el aumento en la incidencia criminal para nuestros ciudadanos, particularmente los delitos cometidos por

individuos que se encontraban bajo fianza al momento de delinquir".

Íd. Así se pretendió extender una mayor protección a las víctimas de delitos violentos.

En lo concerniente al caso de referencia, la Regla 6.1 de las de Procedimiento Criminal, *ante*, dispone lo siguiente:

[…]

(b) **En casos graves o menos graves en que hubiere derecho a juicio por jurado**. En todo caso grave o menos grave en que hubiere derecho a juicio por jurado el magistrado exigirá la prestación de fianza al imputado para permanecer en libertad provisional hasta que se dicte sentencia. En casos apropiados el magistrado podrá permitirle al imputado permanecer en libertad provisional bajo su propio reconocimiento, bajo custodia de tercero, bajo fianza diferida o bajo cualesquiera condiciones que estime pertinentes imponer. El tribunal podrá imponer, *motu proprio* o a solicitud del Ministerio Fiscal, condiciones de conformidad con la Regla 218(c). **En los casos de personas a quienes se le imputen alguno de los siguientes delitos graves, según tipificados en el Código Penal de Puerto Rico y otras leyes especiales, además de fijar la fianza correspondiente, el tribunal tendrá, al fijar la fianza, que imponer la condición de que se sujete a supervisión electrónica al imputado y aquéllas otras condiciones enumeradas en el inciso (c) de la Regla 218, conforme al procedimiento establecido en dicha Regla. Los delitos son: asesinato**; [...] **violaciones a las disposiciones de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como "Ley para la Prevención e Intervención con la Violencia Doméstica", que impliquen grave daño corporal y aquellos delitos graves en los cuales se utilice cualquier tipo de arma**, según ésta se define en la Ley 168-2019, según enmendada, conocida como "Ley de Armas de Puerto Rico".

En todos los casos en que se impute la comisión de los delitos enumerados anteriormente, el tribunal contará con el informe de evaluación y recomendación de la Oficina de Servicios con Antelación al Juicio, salvo que no autorizará la fianza diferida. El Ministerio Público tendrá derecho a revisar el Informe de Evaluación y Recomendación de PSAJ antes del inicio de la vista de determinación de causa probable para arresto o causa probable para arresto en alzada según corresponda. En caso de que se determine causa probable para arresto en ausencia del imputado, la fianza que fije el magistrado, sólo podrá ser modificada mediante moción bajo la Regla 218.

(c) **En cualquier momento en que las circunstancias lo justifiquen**, el magistrado o el tribunal podrá exigir la prestación de una fianza, revocar o modificar una

determinación de libertad bajo propio reconocimiento o bajo custodia de tercero, revocar o modificar una concesión de libertad bajo fianza diferida, o imponer condiciones, así como revocar o modificar condiciones previamente impuestas, de conformidad con la Regla 218(c) antes del fallo condenatorio a cualquier persona que se encontrare en libertad haya o no prestado fianza. (Énfasis provisto).

Por su parte, la Regla 218 de Procedimiento Criminal, *supra,* reafirma la facultad del TPI para revisar o imponer cualquier condición razonable luego de que se preste la fianza, a saber:

(a) **Derecho a fianza; quién la admitirá; imposición de condiciones.** —Aquella persona arrestada por cualquier delito que tenga derecho a quedar en libertad bajo fianza o bajo las condiciones impuestas de conformidad con el inciso (c) de esta regla hasta tanto fuera convicta. **A los fines de determinar la cuantía de la fianza correspondiente y la imposición de las condiciones que se estimen propias y convenientes, el tribunal deberá contar con el informe de evaluación y recomendaciones que rinda la Oficina de Servicios con Antelación al Juicio** a tenor con las disposiciones de las secs. 1301 et seq. del Título 4. En los casos de personas a quienes se le impute alguno de los siguientes delitos graves, según tipificados en el Código Penal de Puerto Rico y otras leyes especiales, además de fijar la fianza correspondiente, **el tribunal tendrá, al fijar la fianza, que imponer la condición de que se sujete a supervisión electrónica al imputado y aquéllas otras condiciones enumeradas en el inciso (c) de esta regla, conforme al procedimiento establecido en esta regla. Los delitos son: Asesinato; [...] Maltrato intencional de menores, según dispuesto en la sec. 450c del Título 8; [...] violaciones a las disposiciones de las secs. 601 et seq. del Título 8, conocidas como "Ley para la Prevención e Intervención con la Violencia Doméstica", que impliquen grave daño corporal y aquellos delitos graves en los cuales se utilice cualquier tipo de arma**, según ésta se define en las secs. 5001 *et seq.* del Título 9, conocidas como "Ley de Armas de Puerto Rico", y las circunstancias dispuestas en el inciso (c) de esta regla, el tribunal podrá disponer que una persona quede en libertad provisional bajo su propio reconocimiento, bajo custodia de tercero o bajo fianza diferida. La fianza, cuando se requiera en estos casos, podrá ser admitida por cualquier magistrado, excepto en caso de que se determine causa probable para arresto en ausencia del imputado, en cuyo caso la fianza que fije el magistrado sólo podrá ser modificada mediante moción bajo la Regla 218.

.         .         .         .         .         .         .         .

(c) **Imposición de condiciones**. Sujeto a lo dispuesto en la Regla 6.1(a), (b) y (c) podrán imponerse una o más de las siguientes condiciones:

(1) Quedar bajo la responsabilidad de otra persona de reconocida buena reputación en la comunidad, o bajo la supervisión de un oficial probatorio u otro funcionario que designe el tribunal. El tribunal determinará el grado y manera en que se ejercerá la supervisión y la persona que actúe como custodio vendrá obligada a supervisarle, producirle en corte e informar de cualquier violación a las condiciones impuestas.

(2) No cometer delito alguno durante el período en que se encuentre en libertad ni relacionarse con personas que planifiquen, intenten cometer o cometan actos delictivos.

(3) Conservar el empleo o, de estar desempleado, hacer gestiones para obtenerlo.

(4) Cumplir con determinados requerimientos relacionados a su lugar de vivienda o la realización de viajes.

(5) Evitar todo contacto con la alegada víctima del crimen o con testigos potenciales.

(6) No poseer armas de fuego o cualquier otra arma mortífera.

(7) **No consumir bebidas alcohólicas o drogas narcóticas o cualquier otra sustancia controlada.**

(8) Someterse a tratamiento médico o siquiátrico, incluyendo tratamiento para evitar la dependencia a drogas o bebidas alcohólicas.

(9) **No abandonar su lugar de residencia, vivienda o vecindad en determinados días y horas para preservar su seguridad o la de otros ciudadanos**.

(10) Entregar al magistrado u otra persona que éste designe el pasaporte o cualquier otro documento que acredite la residencia o ciudadanía del imputado.

(11) Cuando en la comisión del delito se hubiere utilizado un vehículo alquilado a una empresa acreditada, el magistrado le deberá ordenar al imputado que deposite una garantía legal suficiente a favor del Estado Libre Asociado de Puerto Rico para cubrir el monto del valor de la tasación del vehículo para la eventualidad de que proceda la confiscación. En los casos en que proceda la confiscación del vehículo, el producto de la garantía será depositado en el fondo especial administrado por la Junta de Confiscaciones según establecido en la Ley Núm. 93 de 13 de julio de 1988, según enmendada.[8]

---

[8] La Ley Núm. 93 de 13 de julio de 1988 fue derogada y sustituida por la Ley 119-2011, según enmendada, conocida como Ley Uniforme de Confiscaciones de 2011.

**(12) Cumplir con cualquier otra condición razonable que imponga el tribunal**.

Las condiciones impuestas de conformidad con esta regla no podrán ser tan onerosas que su observancia implique una detención parcial del imputado como si estuviera en una institución penal.

No obstante, en aquellos delitos que menciona el inciso (a) de esta regla, se establecen las siguientes restricciones:

(1) No se impondrá al imputado una fianza con el beneficio del pago del diez por ciento (10%) en efectivo.

**(2) El tribunal, en estos delitos, tendrá que imponer como condición especial adicional para quedar en libertad bajo fianza, que el imputado se sujete a la supervisión electrónica, bajo la Oficina de Servicios con Antelación al Juicio**.

(3) No se podrá diferir la fianza.

(13) En aquellos delitos que menciona el inciso (a) de esta regla el tribunal impondrá de forma **mandatoria** la totalidad de los siguientes requisitos al momento de imponer una fianza, independientemente de la forma en que el acusado realice la prestación de la misma:

(A) **Evitar todo contacto con la alegada víctima del crimen o con testigos potenciales**.

(B) No cometer delito alguno durante el período en que se encuentre en libertad ni relacionarse con personas que planifiquen, intenten cometer o cometan actos delictivos.

(C) No poseer armas de fuego o cualquier otra arma que pueda causar la muerte.

(D) **No consumir bebidas alcohólicas o drogas narcóticas o cualquier otra sustancia controlada.**

(E) Comparecer o reportarse junto al tercer custodio en todos los procesos judiciales y todos los procedimientos ante un oficial de supervisión y seguimiento de la Oficina de Servicios con Antelación a Juicio en la forma en que se disponga por reglamento.

(F) **Permanecer en su domicilio en un horario restrictivo desde las seis de la tarde (6:00 PM) hasta las seis de la mañana (6:00 AM); excepto en los casos en que el tribunal expresamente lo autorice por razones de trabajo, estudio, tratamiento médico, viaje justificado o cualquier razón meritoria.**

[...]

> **En los casos en que proceda la imposición de las restricciones establecidas en esta regla, el Juez celebrará una vista adversativa en la que se evalué la peligrosidad del imputado y la gravedad del delito imputado, a los fines de determinar si le puede imponer las condiciones antes enumeradas para garantizar su comparecencia y la seguridad pública**.

> En la vista el juzgador evaluará los siguientes factores: (1) **las características y circunstancias del delito imputado**; (2) la historia y características del imputado, incluyendo su carácter y condición mental, lazos familiares, **empleo**, recursos económicos, el tiempo de residencia en la comunidad, lazos con la comunidad, conducta anterior, antecedentes penales, y cumplimiento anterior con previas comparecencias; y (3) **el peligro que correría alguna persona, o la comunidad, al quedar libre el imputado**.

> Durante la vista, el imputado tendrá derecho a estar representado por abogado. **La determinación del juez podrá ser revisada mediante *certiorari* ante el Tribunal de Apelaciones**.

> (d) **Revisión de las condiciones o de la fianza**.

> (1) *Antes de la convicción.* —Una parte puede solicitar la revisión de las condiciones o de la fianza señaladas mediante moción, únicamente ante la Sala del Tribunal de Primera Instancia correspondiente al distrito judicial con competencia para conocer de la causa. Si la moción fuere solicitando la ampliación de las condiciones o el aumento de la fianza, el magistrado que hubiere de entender en la misma señalará condiciones encaminadas a garantizar la comparecencia del imputado, incluyendo la citación para notificarle la resolución del tribunal sobre la moción de revisión de las condiciones o de la fianza. Una moción para ampliar o limitar las condiciones o para aumentar o reducir la fianza se resolverá dentro de las veinticuatro (24) horas siguientes a su presentación, previa audiencia al fiscal y a la persona imputada, si tuvieren a bien comparecer después de haber sido citados. (Énfasis suplido).
> […]

III.

Por otro lado, la violencia doméstica constituye una conducta muy repudiada, razón por la cual existe una clara política pública en su contra. *Pueblo v. Figueroa Santana*, 154 DPR 717, 723 (2001); *San Vicente v. Policía de P.R.*, 142 DPR 1, 2 (2001). Las víctimas más frecuentes de esta problemática son las mujeres y los niños, grupos que históricamente han sufrido los efectos más desgarradores de la

violencia, la pobreza y el discrimen. *Pueblo v. Figueroa Santana*, 154 DPR a la pág. 724.

La Ley 54, *ante*, fue promulgada en respuesta a los múltiples incidentes de agresión entre parejas registrados en Puerto Rico. Mediante el aludido estatuto, el Estado reafirmó su compromiso constitucional de proteger la vida, la seguridad y la dignidad de los hombres y mujeres que habitan en su jurisdicción, fomentando, de este modo, la paz social y la sana convivencia en familia.

Los casos de violencia doméstica están revestidos del más alto interés público. Véase, *San Vicente v. Policía de P.R.*, 142 DPR 1, 11-12 (1996). Cónsono con lo anterior, la Asamblea Legislativa **elevó a rango de ley** "el requisito de establecer Protocolos de Intervención con Víctimas/Sobrevivientes de Violencia Doméstica" para que "sirvan de **guía de cumplimiento** para los funcionarios de agencias gubernamentales que intervienen en las etapas del proceso de ayuda con la víctima/sobreviviente de violencia doméstica y con los/as niños/as bajo su custodia". Exposición de Motivos, Ley Núm. 88 de 26 de agosto de 2005 (Ley 88-2005).

Recientemente, a tenor con lo dispuesto en la Ley 88-2005, el 23 de junio de 2022, el Poder Judicial y varias agencias de la Rama Ejecutiva[9] adoptaron el Protocolo Intergubernamental para Coordinar la Respuesta, Orientación e Intercambio de Información para la Atención de Personas Sobrevivientes de Violencia de Género en Situaciones de Violencia Doméstica (el "Protocolo").[10]

De acuerdo con el Protocolo, cuando el Ministerio Público presenta cargos por los delitos correspondientes, el Negociado de la Policía y el PSAJ deben solicitarle a la persona sobreviviente que complete el formulario denominado Hoja de Entrevista en Casos de

---

[9] Departamento de Justicia, Departamento de la Familia, Departamento de Salud, Departamento de Seguridad Pública, Negociado de la Policía de Puerto Rico, Departamento de Corrección y Rehabilitación, Junta de Libertad Bajo Palabra y la Oficina de la Procuradora de las Mujeres.
[10] Este Protocolo derogó el Protocolo anterior del 6 de noviembre de 2013.

Violencia Doméstica.  En dicho formulario, la persona sobreviviente debe establecer zonas de exclusión.  Asimismo, puede añadir o incorporar zonas de exclusión adicionales en cualquier momento a través del PSAJ.  **La zona de exclusión consiste en un área de treinta minutos de distancia (en automóvil y de noche) ente la persona imputada y la sobreviviente**.  El propósito de la zona de exclusión es que el "PSAJ pueda activar sus protocolos y así salvaguardar la seguridad y vida de la persona sobreviviente".[11]

IV.

Luego de un análisis detallado del récord del caso y de la regrabación de la vista celebrada el 26 de agosto de 2024, concluimos que erró el TPI al permitir al Imputado trabajar tres noches en semana en un lugar ubicado dentro de las zonas de exclusión aplicables.  Ello es contrario al Protocolo contemplado por ley y, en este caso, no surgen del récord circunstancias que pudiesen justificar apartarse de la regla general de mantener a un imputado fuera de las referidas zonas de exclusión.

De entrada, el TPI concedió el cambio en las condiciones del *lockdown* **antes** de celebrar una vista.  Además, se desprende manifiestamente de la regrabación que la vista fue, a todas luces, *proforma.*  De la regrabación de la vista surge que, aun antes de terminar el interrogatorio de los testigos, el TPI adelantó que no reconsideraría su determinación.  En efecto, el TPI expresó categóricamente que el Protocolo no podía ir por encima de los derechos "constitucionales" de los trabajadores, del derecho del imputado a trabajar y la presunción de inocencia de este.[12]  Añadió que el lugar de trabajo propuesto era un negocio legítimo, con los permisos correspondientes y que, hasta que un tribunal declarase

---

[11] Véase, Inciso X, Procedimientos, Acápite E, Procesos Judiciales, subinciso 2, Procedimientos de naturaleza penal: orientación a personas sobrevivientes, (b)(iii), Negociado de la policía y PSAJ del Protocolo.
[12] Regrabación, min. 23.2-24:27 y 38:50-39:10.

que el lugar de empleo propuesto era ilegal o no tenía sus permisos, no reconsideraría su posición.[13]

Más importante aún, es un hecho incontrovertido que el lugar de trabajo propuesto por el Imputado **simple y sencillamente no cumple con las zonas de exclusión** pertinentes. Así lo reconoció en corte abierta la Sra. Gloricela Medina Medina, supervisora del PSAJ en la región de Carolina. Expresamente la señora Medina Medina admitió que, si se observaba el requisito de las zonas de exclusión, el Imputado no podría trabajar donde solicitó.[14] La señora Medina Medina declaró que su análisis de la zona de exclusión en cuanto a la residencia de la Víctima fue más específico que el análisis que previamente realizó la Sra. Melissa Álvarez Mayol, trabajadora social del PSAJ, quien el 20 de junio de 2024 interpuso la *Moción Informativa Urgente Expresando Posición del PSAJ sobre: Moción Sobre Modificación de Condiciones*.[15] Lo cierto es que el análisis previo de la trabajadora social arrojó un resultado de 22 minutos de distancia entre el lugar de trabajo y el lugar de residencia de la Víctima, mientras que el análisis "más detallado" de la señora Medina Medina tuvo como resultado una distancia de 22 a 25 minutos. No hay mayor diferencia entre ambos análisis y la realidad es que el resultado es el mismo: el lugar de trabajo propuesto no cumple con la zona de exclusión.

La señora Medina Medina declaró que las zonas de exclusión añadidas por la Víctima consisten en la residencia de la madre de esta y otras zonas relacionadas con sus hijos: un parque de pelota, aunque no estaban en temporada en ese momento, y el trabajo de otro de ellos. **Admitió que le preocupaba la residencia de la madre de la Víctima**. La señora Medina Medina declaró que dicha

---

[13] Íd., mín. 24:55- 25:07 y 38:50-39:10.
[14] Regrabación, min. 12:00-12:09.
[15] Como indicáramos previamente, en la *Moción Informativa* del 20 de junio, el PSAJ no recomendó la modificación en las condiciones del arresto domiciliario del Imputado.

dirección le preocupaba porque la distancia del lugar de trabajo propuesto fluctuaba entre quince (15) a dieciséis (16) minutos.[16]

A pesar de que indicó que el Protocolo establece que la zona de exclusión debe ser de treinta (30) minutos, sostuvo que habría que esperar la interpretación del tribunal.[17] Explicó que el Protocolo requiere un periodo de treinta (30) minutos para darle tiempo a su oficina a responder debidamente a una emergencia. Afirmó que son diez (10) minutos, como mínimo, los necesarios para movilizar la Policía estatal y municipal, y los agentes del propio PSAJ, **para proteger la víctima**.[18] Aunque reconoció que le preocupaba la distancia entre el lugar propuesto de trabajo y la residencia de la progenitora de la Víctima, reiteró que era discrecional del tribunal determinar si aceptaba el periodo de treinta (30) minutos o no.[19]

En cuanto al lugar de trabajo, tanto la señora Medina Medina como el señor Zaidspiner reconocieron que en **dicho lugar se venden bebidas alcohólicas y que el Imputado las cobra**.[20] No obstante, la señora Medina Medina entendió que, al ser el Imputado el encargado de cobrar todos los servicios del negocio, debía estar en sus cinco sentidos al administrarlo.[21] Por su parte, el señor Zaidspiner declaró que el Imputado es el gerente del negocio y que se conocen hace treinta (30) años.[22] Expresó que las funciones del Imputado son abrir y cerrar el negocio, supervisar a los empleados y el inventario, cobrar y cuadrar la caja.[23] Aseguró que supervisa al Imputado personalmente en el negocio y, cuando no puede hacerlo personalmente, lo hace desde su teléfono celular o mediante cámaras.[24] Culminado el testimonio del señor Zaidspiner,

---

[16] Regrabación, min. 13:16- 13:30.
[17] Íd., min. 14:00-14:20.
[18] Íd., min. 14:35-15:10.
[19] Íd., min. 15:13-15:29.
[20] Íd., min. 17:44-18:24 y 33:05-33:53.
[21] Íd., min. 19:25-19:43.
[22] Íd., min. 30:30-31:33.
[23] Regrabación, 32:32-32:58.
[24] Íd., 31:34-32:17.

el TPI se reiteró en que mantendría su posición de autorizar el horario y lugar de trabajo solicitados por el Imputado.

Como cuestión de derecho, y como mínimo, la regla debe ser la fiel observancia de lo dispuesto en el Protocolo. El Protocolo existe por virtud de la Ley 88-2005, *ante*, y fue suscrito por el Poder Judicial y las agencias previamente aludidas. Resaltamos que las "leyes hay que interpretarlas y aplicarlas en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver'". *Pueblo v. Figueroa Santana*, 154 DPR a la pág. 723, citando a *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 537 (1999); *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 DPR 735, 756 (1992).

Nuestra conclusión se fortalece al considerar que "[l]a violencia doméstica es un mal endémico y una infamia repudiable que aqueja a la sociedad contemporánea. Si algo ha de quedar claro es la política pública en su contra ...". *San Vicente v. Policía de Puerto Rico*, 142 DPR 1, 2 (1996).

Transcurridas casi tres décadas desde ese entonces, recientemente el Gobernador del Estado Libre Asociado de Puerto Rico decretó un estado de emergencia debido al alza en los casos de violencia de género, especialmente en contra de la mujer, y ordenó establecer medidas dirigidas para prevenir y erradicar este mal en nuestra sociedad.[25]

Aunque no descartamos que el TPI, en circunstancias excepcionales, pudiese tener autoridad para apartarse de la regla general establecida por el Protocolo (sin resolverlo, por ser innecesario en este caso), según la cual no puede autorizarse a un

---

[25] Véase, Boletín Administrativo Núm. OE-2021-013, *Orden Ejecutiva del Gobernador de Puerto Rico, Hon. Pedro R. Pierluisi, declarando un Estado de Emergencia ante el Aumento de Casos de Violencia de Género en Puerto Rico.* Subsiguientemente, se han expedido dos (2) Órdenes Ejecutivas adicionales con el objetivo de dar prioridad a la prevención y atención de la violencia de género a través de un enfoque multisectorial.

imputado ingresar en una zona de exclusión, fijada sobre el criterio de distancia de 30 minutos, el récord no podría apoyar dicho curso de acción en este caso.

Al contrario, las circunstancias particulares de este caso apuntan en la otra dirección. En primer lugar, la gravedad y violencia de los hechos imputados no aconsejaba ignorar lo dispuesto en el Protocolo. Según las acusaciones, los hechos ocurrieron a las 11:00 pm, en presencia de los hijos menores de edad de la Víctima, y unas horas más tarde, en la madrugada, cuando se acusa al Imputado de intentar asesinar a la Víctima con un cuchillo, también en presencia de sus hijos menores de edad.

En segundo lugar, tampoco puede considerarse favorable a la solicitud del Imputado el horario del trabajo propuesto y el hecho de que se trata de un negocio en el que se venden y consumen bebidas alcohólicas[26].

En tercer lugar, en cuanto a la postura de la Víctima, lo único que surge del récord es que esta le manifestó a PSAJ que **teme por su vida**, lo cual tampoco puede considerarse favorable a la solicitud del Imputado. Contrario a lo que especula el Imputado, la ausencia de testimonio en la vista por la Víctima no puede tomarse como una aseveración implícita de que ya no teme por su seguridad[27].

En fin, el TPI no debió apartarse de lo establecido en el Protocolo y, así, no debió autorizar al Imputado trabajar dentro de las zonas de exclusión establecidas válidamente por la Víctima. La severidad de los hechos, la naturaleza del lugar de trabajo y el horario solicitado no aconsejaban apartarse de la regla general de hacer cumplir lo establecido en el Protocolo.

---

[26] Surge del récord que el lugar propuesto de empleo, **D'Girls, ubicado en Santurce**, es un club nocturno para "caballeros", donde se sirven bebidas alcohólicas y el cual opera hasta altas horas de la madrugada.

[27] La denegatoria de esta solicitud particular de trabajo no implica condenar al Imputado a una "detención" similar a la reclusión mientras espera por el juicio, pues este permanece libre para solicitar autorización para trabajar fuera de la zona de exclusión aplicable.

## VI.

En atención a los fundamentos que anteceden, se expide el auto de *certiorari* solicitado y se revoca la *Minuta-Resolución Enmendada* recurrida. En auxilio de nuestra jurisdicción, y por la naturaleza del asunto ante nuestra consideración, esta determinación tiene vigencia inmediata y, por tanto, no depende la misma de la remisión del mandato correspondiente al Tribunal de Primera Instancia.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelación