Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| ADALBERTO CUADRADO RIVERA<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurridos | KLRA202400689 | *Revisión Administrativa* Procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 148496<br><br>Sobre:<br><br>NO CONCESIÓN DEL PRIVILEGIO DE LIBERTAD BAJO PALABRA - VOLVER A CONSIDERAR |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de enero de 2025.

El señor Adalberto Cuadrado Rivera (en lo sucesivo, Sr. Cuadrado Rivera o recurrente) comparece ante nosotros mediante el presente recurso, solicitando la revisión de la *Resolución* emitida el 17 de octubre de 2024 y notificada el 4 de diciembre de 2024 por la Junta de Libertad Bajo Palabra (en lo sucesivo, "Junta de Libertad"). Mediante dicho dictamen, la Junta de Libertad denegó su solicitud del privilegio de libertad bajo palabra.

Por los fundamentos que expondremos, resolvemos confirmar la *Resolución* recurrida.

**I**

El 10 de julio de 2012, el Sr. Cuadrado Rivera fue sentenciado a veinte (20) años de prisión por el delito de asesinato en segundo grado y a tres (3) años y un (1) día de prisión por infracción al Artículo 2.8 de Ley Núm. 54 de 15 de agosto de 1989, según enmendada, conocida como *Ley para la Prevención e Intervención*

Número Identificador

SEN2025_____

*con la Violencia Doméstica,* 8 LPRA sec. 628. El recurrente disfrutó del beneficio de pase extendido en virtud de la Núm. 25-1992, según enmendada, conocida como *"Ley para el Egreso de Pacientes de S.I.D.A. y de otras Enfermedades en su Etapa Terminal que Están Confinados en las Instituciones Penales o Internados en las Instituciones Juveniles de Puerto Rico"*, 4 LPRA sec. 1601 *et seq.*, desde el 2 de diciembre de 2022 hasta el 30 de mayo de 2024, cuando fue reingresado a la institución penal.

El 6 de abril de 2024, la Junta de Libertad asumió jurisdicción para evaluar la posibilidad de conceder el privilegio de libertad bajo palabra. Tras el trámite y la adjudicación correspondiente, la Junta de Libertad emitió la resolución recurrida el 17 de octubre de 2024, notificada el 14 de noviembre de 2024, denegando privilegio de libertad bajo palabra.[1] En su resolución, la Junta de Libertad realizó las determinaciones de hechos siguientes:

### DETERMINACIONES DE HECHOS

1.    Al momento de la evaluación del expediente, surge que la parte de epígrafe no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes.

2.    El peticionario se encuentra clasificado en custodia mínima desde el 29 de octubre de 2019.

3.    La parte peticionaria, no cuenta con plan de salida estructurado en el área de amigo consejero.

4.    La parte peticionaria, no cuenta con plan de salida viable en el área de vivienda.

5.    El peticionario cuenta con certificación de Patrones Adictivo del 21 de noviembre de 2017.

6.    El peticionario cuenta con evaluación psicológica de Salud Mental con fecha del 7 de junio de 2024.

7.    Cuenta con muestra de ADN, según requiere la Ley 175 de 1998 y la fecha de esta es de 9 de marzo de 2016.

8.    El peticionario completó el Taller de Aprendiendo a vivir sin Violencia y la de fecha de esta fue el 21 de junio de 2017.

---

[1] Véase, Apéndice 1 de la *Petición de Revisión Administrativa,* págs. 1-6.

9. Surge del expediente que el peticionario no sintió arrepentimiento en la comisión del delito imputado de Asesinato en Segundo Grado.

10. El peticionario no puede trabajar por razón de salud, de acuerdo con el informe para posible Libertad Bajo Palabra (Formulario FE-I-1) con fecha del 30 de noviembre de 2023.

11. El peticionario realizó el pago de la pena especial impuesta por el Tribunal de Primera Instancia, Sala Superior de San Juan por la cuantía de $ 300.00 dólares, la cual se le aplicó por la Ley 183 del 29 de julio de 1998. Dicha información surge del Informe para Posible Bajo Palabra (Formulario FE-I-1) con fecha del 30 de noviembre de 2023.

12. Se benefició por la Ley Núm. 25 del 19 de julio de 1992, relacionada a condiciones de salud y salió en pase extendido con grillete electrónico desde el 2 de diciembre de 2022 hasta que nuevamente reingreso el 30 de mayo de 2024.[2]

Finalmente, la Junta de Libertad concluyó y resolvió lo siguiente:

"En el caso que nos ocupa, mencionamos aquellos factores que favorecieron al peticionario y otros que no, para la concesión del privilegio.

Al momento de la evaluación del expediente, surge que la parte de epígrafe no cuenta con casos ante los tribunales, denuncias o querellas institucionales pendientes.

El peticionario se encuentra clasificado en custodia mínima.

La parte peticionaria, no cuenta con plan de salida estructurado en el área de amigo consejero.

La parte peticionaria, no cuenta con un plan de salida viable en el área de vivienda.

El peticionario cuenta con certificación de Patrones Adictivos.

El peticionario cuenta con evaluación psicológica de Salud Mental con fecha del 7 de junio de 2024.

Cuenta con muestra de ADN, según requiere la Ley número 175 del 1998 y la fecha de esta es 9 de marzo de 2016.

El peticionario completó el Taller Aprendiendo a vivir sin Violencia.

---

[2] Véase, Apéndice 1 de la *Petición de Revisión Administrativa*, págs. 1-2.

Surge del expediente que el peticionario no sintió arrepentimiento en la comisión del delito imputado de Asesinato en Segundo Grado.

El peticionario no puede trabajar por razón de salud, de acuerdo con el Informe para posible Libertad Bajo Palabra (Formulario FE -I- 1) con fecha del 30 de noviembre de 2023.

El peticionario realizó el pago de la pena especial impuesta por el Tribunal de Primera Instancia, Sala Superior de San Juan por la cuantía de $300.00 dólares, la cual se le aplicó por la Ley 183 del 29 de julio de 1998. Dicha información surge del Informe para Posible Libertad Bajo Palabra (Formulario FE -I - 1) con fecha del 30 de noviembre de 2023.

Se benefició por la Ley 25 del 19 de julio de 1992, relacionada a condiciones de salud y salió en pase extendido con grillete electrónico desde el 2 de diciembre de 2022 hasta que nuevamente reingreso el 30 de mayo de 2024.

Tomando en consideración todos los factores del presente caso, consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra.

Se dispone no conceder el privilegio de libertad bajo palabra a Adalberto Cuadrado Rivera c/p Alberto Cuadrado Rivera. Este caso volverá a ser considerado para el mes de octubre de 2025."[3]

En desacuerdo, el Sr. Cuadrado Rivera acudió ante nosotros el 16 de diciembre de 2024 mediante el presente recurso de revisión, señalando los errores siguientes:

Erró la Junta de Libertad Bajo Palabra al denegar al recurrente el beneficio contrario a la disposición de su propio reglamento, la realidad fáctica y la totalidad del expediente.

Erró la Junta de Libertad Bajo Palabra al negar el privilegio bajo una determinación de que no hubo arrepentimiento del recurrido sin tomar en consideración el informe rendido por el Dr. Renier Baez Alfau y el testimonio del recurrido, y descartar el informe social que incluía la investigación del plan de salida propuesto en cuanto a residencia y hogar propuesto y otros extremos.

El 18 de diciembre de 2024, emitimos una *Resolución* concediéndole al Procurador General un término de veinte (20) días para exponer su posición respecto al recurso.

---

[3] Véase, Apéndice 1 de la *Petición de Revisión Administrativa*, pág. 4.

Además, se le ordenó a la Junta de Libertad presentar copia certificada del expediente original administrativo del Caso Núm.: 148496.

El 15 de enero de 2025, la Junta de Libertad, representada por el Procurador General, presentó un *Escrito en Cumplimiento de Resolución*.

Contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.**

La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable. *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferré v. A.R.Pe.*, 172 DPR 254, 264 (2007). A esos efectos, la revisión judicial comprende tres aspectos: la concesión del remedio apropiado, la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial, y la revisión completa de las conclusiones de derecho. *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010); *Mun. de. San Juan v. J.CA.*, 149 DPR 263, 279-280 (1999).

En cuanto al alcance de la revisión judicial en las determinaciones administrativas, los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. *Pérez López v. Depto. Corrección*, 208 DPR 656 (2022). Véase, además, *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821, (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011); *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006); *San Vicente v. Policía de P.R.*, 142 DPR 1 (1996). Esto es así, pues, son las agencias administrativas con la vasta experiencia y el conocimiento especializado para atender los

asuntos que se le encomiendan. *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006). Por tal razón, el alcance de la revisión judicial a una determinación final de una agencia administrativa se limitará a "determinar si la agencia actuó arbitraria, ilegal o irrazonablemente en abuso a su discreción". *Pérez López v. Depto. Corrección*, supra, en la pág. 673.

Sobre las determinaciones de hechos, el Tribunal Supremo ha establecido que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Batista, Nobbe v. Jta. Directores,* supra, pág. 216, citando a *Pereira Suárez v. Jta. Dir. Cond.*, 182 DPR 485, 511-512 (2011); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397-398 (1999). La evidencia sustancial es "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Íd.*, citando a *Pereira Suárez v. Jta. Dir. Cond.*, supra*; Otero v. Toyota,* 163 DPR 716, 728 (2005). Dicho análisis requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997). Ello implica que, de existir un conflicto razonable en la prueba, debe respetarse la apreciación de la agencia. *Hilton Hotels v. Junta Salario Mínimo,* 74 DPR 670, 687 (1953).

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003). Para ello, deberá demostrar que existe otra prueba en el expediente, que reduzca o menoscabe el valor probatorio de la

evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 245 (2007).

Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hecho y no sustituirá el criterio de la agencia por el suyo. *Otero v. Toyota, supra*.

En cambio, las conclusiones de derecho son revisables en todos sus aspectos. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 894 (2008). De esta manera, los tribunales, al realizar su función revisora, están compelidos a considerar la especialización y la experiencia de la agencia con respecto a las leyes y reglamentos que administra. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75-76 (2000). Así pues, si el punto de derecho no conlleva interpretación dentro del marco de la especialidad de la agencia, entonces el mismo es revisable sin limitación. *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997).

Sin embargo, aun cuando el tribunal tiene facultad para revisar en todos sus aspectos las conclusiones de derecho de una agencia, se ha establecido que ello no implica que los tribunales revisores tienen la libertad absoluta para descartarlas libremente. *López Borges v. Adm. Corrección*, 185 DPR 603, 626 (2012); *Federation Des Ind. v. Ebel*, 172 DPR 615, 648 (2007).

Si del análisis realizado se desprende que la interpretación que hace una agencia de su reglamento o de la ley que viene llamada a poner en vigor resulta razonable, el tribunal debe abstenerse de intervenir. *Cruz v. Administración*, 164 DPR 341, 357 (2005).

Finalmente, cabe citar lo que la Ley Núm. 38-2017, según

enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 LPRA sec. 9601 *et seq.*, dispone en cuanto al alcance de la revisión judicial y los remedios. La Sección 4.5 de la Ley Núm. 38-2017, *infra,* dispone que:

> "El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio. Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."

A su vez, la Sección 4.6 de la Ley Núm. 38-2017, *infra,* dispone que:

> "El Tribunal de Apelaciones revisará como cuestión de derecho las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. La mera presentación del recurso no paralizará el trámite en el organismo o agencia administrativa, a menos que el Tribunal así lo determine. El procedimiento a seguir para los recursos de revisión será de acuerdo con lo establecido en el Reglamento del Tribunal de Apelaciones aprobado por el Tribunal Supremo. No será obligatoria la comparecencia del Gobierno de Puerto Rico ante el Tribunal de Apelaciones a menos que así lo ordene el Tribunal. El tribunal podrá conceder el remedio solicitado o cualquier otro remedio que considere apropiado, incluyendo recursos extraordinarios, aunque no haya sido solicitado, y podrá conceder honorarios razonables de abogados, costos y gastos a cualquier parte que haya prevalecido en la revisión judicial."

**B.**

Mediante la Ley Núm. 118 de 22 de Julio de 1974, según enmendada, *"Ley de la Junta de Libertad Bajo Palabra"*, según enmendada, 4 LPRA sec. 1501 *et seq.*, se creó la Junta de Libertad Bajo Palabra. Esta está adscrita al Departamento de Corrección y Rehabilitación, según establece su Artículo 1 de la Ley Núm. 118 de 22 de Julio de 1974, *supra.* Dicha entidad, posee autoridad para "decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico". Véase, Artículo 3 de la Ley Núm. 118 de 22 de Julio de 1974, *supra.* "La libertad bajo palabra será decretada para el mejor interés de la

sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente". *Íd.* De esta forma, se permite que una persona convicta y sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, "sujeto al cumplimiento de las condiciones que se impongan para conceder la libertad". *Maldonado Elías v. González Rivera*, 118 DPR 260, 275 (1987). Al conceder el privilegio de libertad bajo palabra, la Junta puede imponer las condiciones que estime necesarias. De esta forma, el liberado tiene una libertad cualificada, pues dichas condiciones restringen sus actividades más allá de las restricciones comunes que se le imponen por ley a cada ciudadano. *Benítez Nieves v. E.L.A. et al.*, 202 DPR 818, 825 (2019).

En cuanto a la controversia que nos atañe, el Artículo 3 (a)(6) de la Ley Núm. 118 de 22 de Julio de 1974, *supra*, establece que, "[p]ara determinar si concede o no la libertad bajo palabra, la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección".

Por su parte, en cuanto al proceso de concesión del privilegio de libertad bajo palabra, esta ley establece que:

> "Una persona recluida en una institución carcelaria en Puerto Rico o en cualquier Programa de Desvío que cumpla con los requisitos establecidos por la Junta mediante reglamento o en esta ley, que muestre un alto grado de rehabilitación y que no represente un riesgo a la sociedad, podrá solicitar formalmente el privilegio de libertad bajo palabra dentro de la jurisdicción de la Junta mediante los mecanismos que disponga la misma, igualmente mediante reglamento. La solicitud por parte de la persona recluida conllevará el consentimiento de ésta para que la Junta pueda revisar y obtener copia de todos los expedientes sobre dicha persona en poder de la Administración de Corrección, a fin de que pueda ser considerada para la concesión de los privilegios contemplados en esta Ley.

> Recibida la solicitud, la Junta referirá la evaluación de la misma a uno de los paneles para el trámite y la adjudicación correspondiente." Artículo 3-C de la Ley Núm. 118 de 22 de Julio de 1974, *supra.*

Ahora bien, "el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio cuya concesión y administración recae en el tribunal o en la Junta". *Quiles v. Del Valle,* 167 DPR 458, 475 (2006).

La Junta tendrá facultad para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico, tomando en consideración los siguientes criterios:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
>
> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
>
> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
>
> (6) La edad del confinado.
>
> (7) El o los tratamientos para condiciones de salud que reciba el confinado.
>
> (8) La opinión de la víctima.
>
> (9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.
>
> (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.
>
> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.
> La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho. Artículo 3-D de la Ley Núm. 118 de 22 de Julio de 1974, *supra.*

Denegar el beneficio de libertad a prueba a un confinado de forma arbitraria, o revocarle la libertad bajo palabra sin garantizarle el debido proceso de ley, constituye una interferencia o privación de un interés libertario, lo que justifica la intervención judicial oportuna para corregir el agravio. *Vázquez v. Caraballo,* 114 DPR 272, 279 (1983); *Martínez Torres v. Amaro Pérez,* 116 DPR 717, 726-727 (1985).

**C.**

El Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232, Departamento de Estado, 18 de noviembre de 2020, fue creado para establecer las normas procesales que regirán la función adjudicativa de la Junta.[4] Este incorpora mecanismos que permiten realizar los procesos dentro del término que se dispone mientras se salvaguarda el derecho al debido proceso de ley de los peticionarios. Además, incorpora derechos concedidos a las víctimas de delito mediante el establecimiento de normas que le permiten su participación en los procedimientos ante la Junta. Sus disposiciones se deben de interpretar de forma tal que "se garantice un trato equitativo y deferente a los miembros de la población correccional, peticionarios y liberados de conformidad con la política pública de rehabilitación, según establecida en el Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico", y propiciar el tratamiento adecuado que permita la rehabilitación moral y social de estos. Artículo II del Reglamento Núm. 9232, *supra.*

La Junta deberá evaluar las solicitudes del privilegio caso a caso y conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado recluido. En lo

---

[4] El Reglamento Núm. 9232, *supra,* fue enmendado bajo el Núm. 9603 del 25 de septiembre de 2024. No obstante, el Reglamento Núm. 9232, *supra,* era la ley aplicable al momento que la Junta de Libertad evalúa el caso.

pertinente a la controversia ante nos, Artículo X, Sección 10.1 del Reglamento Núm. 9232, *supra*, dispone que se deberá considerar los siguientes criterios:

> 1. Historial delictivo
>     a. La totalidad del expediente penal.
>     […]
>     b. Naturaleza y circunstancias del delito, por el cual cumple sentencia, incluyendo el grado de fuerza o violencia utilizado en la comisión del delito.
>     […]
> 5. **La opinión de la víctima**.
>     a. La opinión de la víctima constituye un factor a ser considerado por la Junta, pero la determinación sobre el grado de rehabilitación de un peticionario y si está capacitado para continuar cumpliendo su sentencia en la libre comunidad es prerrogativa de la Junta.
> […]
> 7. Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero.
>     […]
>     **e. Residencia**
>         i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.
>         ii. De proponer una residencia, el peticionario proveerá el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.
>         […]
>         v. Para determinar si la vivienda propuesta es viable, la Junta considerará:
>             (a) Las características personales e historial delictivo de las personas con alza cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.
>             (b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.
>             (c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.

**(d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito.**[5]

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.

(f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

[...]

**f. Amigo Consejero**

[...]

**vi. No será requerido el amigo consejero a peticionarios mayores de 60 años.**

**III**

En su recurso de revisión, el Sr. Cuadrado Rivera señaló que la Junta de Libertad erró al denegar el privilegio de libertad bajo palabra al concluir que no cumplía con los criterios establecidos en la Ley Núm. 118 de 22 de Julio de 1974, *supra,* y el Reglamento Núm. 9232, *supra.* Alega que la Junta de Libertad, concluyó, de manera incorrecta en su resolución, que el recurrente no contaba con un plan de salida estructurado en el área de amigo consejero ni con un plan de salida viable en el área de vivienda y que, además, señaló, que, según el expediente, no se desprendía arrepentimiento por la comisión del delito de asesinato en segundo grado. En síntesis, el recurrente alega que la determinación de la Junta de Libertad no se basó en la evidencia que obraba en el expediente administrativo.

Según expusimos, la Ley Núm. 118 de 22 de Julio de 1974, *supra,* y el Reglamento Núm. 9232, *supra,* establecen los criterios que la Junta de Libertad deberá tomar en consideración al evaluar

---

[5] A pesar de que el Reglamento Núm. 9232, *supra,* es el que aplica en la evaluación de este caso, por ser más específico, conviene reseñar el actual inciso de la Sección 10.1 (8) (e) (v) (d) del Reglamento Núm. 9603, *supra*:

(d) Si la residencia propuesta está a **30 millas de distancia** en vehículo de la residencia de la parte perjudicada.

una solicitud para conceder el privilegio de libertad bajo palabra a una persona recluida en una institución penal en Puerto Rico.

Conforme al Reglamento Núm. 9232, *supra*, se consideran varios factores en la evaluación de la concesión del privilegio de libertad bajo palabra, entre ellos un plan de salida viable en el área de vivienda, si cuenta con un amigo consejero, la opinión de la víctima y la proximidad de la residencia propuesta con respecto a la de la víctima. Ninguno de estos factores es determinante por sí solo; en cambio, la decisión resulta de un análisis integral que recae en la discreción de la Junta de Libertad. Como Tribunal de Apelaciones, nuestra función no es sustituir el criterio de la Junta de Libertad, sino de asegurarnos de que la determinación haya sido una razonable, no arbitraria y basada en el expediente del caso.

Ciertamente, el recurrente tiene razón en cuanto a que expresamente el Artículo X, Sección 10.1 del Reglamento Núm. 9232, *supra*, dispone que no aplica el requisito de amigo consejero a las personas mayores de sesenta (60) años. Para la fecha en que se dio la vista, el Sr. Cuadrado Rivera contaba con 70 años, ya que nació el 28 de agosto de 1953, por lo cual no le aplica el requisito de amigo consejero y así mismo lo aceptó la Junta de Libertad en su oposición al recurso de revisión que nos ocupa.[6] Por otro lado, el recurrente informó un plan de salida en el área de vivienda que se encuentra descrito en el *Informe de Libertad Bajo Palabra*. En específico, al revisar el expediente, pudimos corroborar que la residencia propuesta está relativamente cerca de una de las víctimas. De igual forma, confirmamos que la opinión de una de las víctimas fue desfavorable a la concesión de este privilegio.

De lo anterior, resolvemos que, no se ha demostrado que la Junta de Libertad actuara de manera irrazonable o arbitraria en su

---

[6] Véase, *Oposición a la Petición de Revisión Administrativa*, pág. 1.

decisión de denegar el privilegio. La Junta de Libertad fundamentó su decisión en varios factores, incluyendo la proximidad de la residencia propuesta respecto a una de las víctimas. Además, consideró la opinión desfavorable de una de las víctimas.

En vista de que la Junta de Libertad actuó dentro de su discreción y conforme a los criterios que establece la ley y su reglamento, entendemos que no existen motivos suficientes para intervenir en su determinación de denegar el privilegio de libertad bajo palabra en este caso.

**IV**

Por los fundamentos expuestos, resolvemos confirmar la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones